JERRY E. SMITH, Circuit Judge:
Family Rehabilitation, Incorporated ("Family Rehab"), a Medicare services provider, was assessed for about $7.6 million in Medicare overpayments. It appealed under Medicare's Byzantine four-stage administrative appeals process but has completed only the second stage, at which point its Medicare revenue became subject to recoupment; it timely requested a hearing before an administrative law judge ("ALJ"), i.e., the third stage. Yet there is a massive backlog in Medicare appeals. Family Rehab likely will not receive an ALJ hearing for at least three years and soon will go bankrupt if recoupment continues. Accordingly, Family Rehab sued for an injunction against recoupment until it receives an ALJ hearing. The district court dismissed for lack of subject-matter jurisdiction. We reverse and remand in regard to Family Rehab's procedural due process and ultra vires claims; in all other respects, we affirm.
*499 I.
Family Rehab provides home healthcare services to patients in Texas, serving approximately 280 patients as of October 2017. Nearly all of its revenue-between 88 and 94 percent-comes from Medicare-reimbursable services. To be reimbursed, Family Rehab is required to perform an initial home health certification for each patient in conformity with various regulatory requirements. 42 C.F.R. § 424.22.
The Centers for Medicare and Medicaid Services ("CMS") is a division of the U.S. Department of Health and Human Services ("HHS") and is responsible for overseeing the Medicare program. CMS contracts with Medicare Administrative Contractors ("MACs"), which are private government contractors, to process and make these reimbursements.[1] See 42 U.S.C. § 1395kk-1 ; 42 C.F.R. §§ 405.904(a)(2), 405.920 - 405.928. Such payments may then be audited by Zone Program Integrity Contractors ("ZPICs"). When a ZPIC identifies an overpayment, it notifies the relevant MAC, which then issues a demand letter to the provider.
In 2016, Family Rehab's ZPIC audited 43 claims and determined that Family Rehab had overbilled Medicare on 93% of them, primarily a result of documentary deficiencies related to the initial home health certification. The ZPIC then used a statistical method to extrapolate the alleged overbilling rate and concluded that Family Rehab had received $7,885,803.23 in excess reimbursements. Family Rehab's MAC sent it a demand for that amount, and Family Rehab entered the harrowing labyrinth of Medicare appeals.
A provider must go through a four-level appeals process. First, it may submit to the MAC a claim for redetermination of the overpayment. 42 U.S.C. § 1395ff(a)(3)(A). Second, it may ask for reconsideration from a Qualified Independent Contractor ("QIC") hired by CMS for that purpose. Id. § 1395ff(c), (g) ; 42 C.F.R. § 405.904(a)(2). If the QIC affirms the MAC's determination, the MAC may begin recouping the overpayment by garnishing future reimbursements otherwise due the provider. 42 U.S.C. § 1395ddd(f)(2) ; 42 C.F.R. § 405.371(a)(3).[2]
Third, the provider may request de novo review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS. 42 U.S.C. § 1395ff(d) ; 42 C.F.R. § 405.1000(d). The ALJ stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. 42 C.F.R. § 405.1036(c)-(d). The ALJ "shall conduct and conclude a hearing ... and render a decision ... not later than" 90 days after a timely request. 42 U.S.C. § 1395ff(d)(1)(A). Fourth, the provider may appeal to the Medicare Appeals Council ("Council"), an organization independent of both CMS and OMHA. 42 C.F.R. § 405.1100. The Council reviews the ALJ's decision de novo and is similarly required to issue a final decision within 90 days. Id. Furthermore, if the ALJ fails to issue a decision within 90 days, the provider may "escalate" the appeal *500 to the Council, which will review the QIC's reconsideration. Id.
Family Rehab, challenging both the initial audit results and the extrapolation methodology, exhausted the first two stages of that administrative appeals process. It sought redetermination from the MAC and reconsideration from a QIC, which calculated its liability as $7,622,122.31. After the MAC indicated it intended to begin recoupment on November 1, 2017, Family Rehab, on October 24, 2017, timely requested an ALJ hearing.
Yet an ALJ hearing is not forthcoming-not within 90 days, and not within 900 days. According to Family Rehab-and effectively conceded by the government-it will be unable to obtain an ALJ hearing for at least another three to five years . And based on HHS's own admissions to a federal judge, the logjam of Medicare appeals shows no signs of abating anytime soon.[3] Thus, the earliest Family Rehab could complete administrative review would be through escalation-which could be as late as July 24, 2018, or 270 days after October 24, 2017.
Accordingly, Family Rehab sued for a temporary restraining order and an injunction to prevent the MAC from recouping the overpayments until its administrative appeal is concluded. Family Rehab alleges that, well before the end of its administrative appeal, it will be forced to shut down from insufficient revenues because of the MAC's recoupment. This situation, Family Rehab asserts, (1) violates its rights to procedural due process, (2) infringes its substantive due-process rights, (3) establishes an "ultra vires " cause of action, and (4) entitles it to a "preservation of rights" injunction under the Administrative Procedure Act, 5 U.S.C. §§ 704 - 05.
The district court sua sponte held that it lacked subject-matter jurisdiction because Family Rehab had not exhausted administrative remedies. See 42 U.S.C. § 405(g). Family Rehab appeals.
II.
We review jurisdictional issues de novo . Physician Hosps. , 691 F.3d at 652. The proponent of jurisdiction has the burden of establishing it. Id. Because the district court dismissed at the Rule 12(b)(1) stage, Family Rehab only need "allege a plausible set of facts establishing jurisdiction." Id.
III.
Under 42 U.S.C. § 405(g) and (h), federal courts are vested with jurisdiction over only a "final decision" of HHS when dealing with claims "arising under" the Medicaid Act.[4] Ordinarily, this means that a provider may come to district court only after either (1) satisfying all four stages of *501 administrative appeal, i.e., after the Council has rendered a decision, or (2) after the provider has escalated the claim to the Council and the Council acts or fails to act within 180 days. Id. §§ 405(g), (h) ; 42 C.F.R. § 405.1132. Neither has occurred here, and Family Rehab concedes that its claims "arise under" the Medicare Act.[5]
Yet both the Supreme Court and this court have recognized exceptions to the channeling requirements of § 405, which Family Rehab now invokes as bases for jurisdiction. First, Family Rehab claims that its procedural due-process and ultra vires claims are collateral to the agency's appellate process, invoking Mathews v. Eldridge , 424 U.S. 319, 326-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[6] Second, Family Rehab insists that § 405"would not simply channel review through the agency, but would mean no review at all," thereby reasoning that jurisdiction is proper under 28 U.S.C. § 1331. See Ill. Council , 529 U.S. at 19, 120 S.Ct. 1084. Third, Family Rehab maintains that the court has mandamus jurisdiction. See Randall D. Wolcott, M.D., P.A. v. Sebelius , 635 F.3d 757, 764 (5th Cir. 2011).
A.
We turn first to the collateral-claim exception, first articulated in Eldridge , 424 U.S. at 330, 96 S.Ct. 893. There, the Court held that jurisdiction may lie over claims (a) that are "entirely collateral" to a substantive agency decision and (b) for which "full relief cannot be obtained at a postdeprivation hearing." Id. at 330-32, 96 S.Ct. 893. As the Court explained, HHS has the power to "waive the exhaustion requirement" and determine when finality has occurred. Id. at 330, 96 S.Ct. 893. Thus, "when a plaintiff asserts a collateral challenge that cannot be remedied after the exhaustion of administrative review," courts shall deem exhaustion waived.[7] Family Rehab contends that its procedural due-process and ultra vires claims meet both requirements. We agree.
1.
For a claim to be collateral, it must not require the court to "immerse itself" in the substance of the underlying Medicare claim or demand a "factual determination" as to the application of the Medicare Act. Affiliated Prof'l , 164 F.3d at 285-86. Nor can the claim request relief that would be "administrative," i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process. Id. at 286. Instead, *502 the claim must seek some form of relief that would be unavailable through the administrative process. Eldridge , 424 U.S. at 330-32, 96 S.Ct. 893. Because these requirements have led to disharmony among our district courts, we explicate them through the relevant caselaw.[8]
In Eldridge , the Court held that the plaintiff could bring a procedural due-process claim requesting an evidentiary hearing before the termination of disability benefits. Id. at 319, 330-32, 96 S.Ct. 893.[9] The plaintiff "sought an immediate reinstatement of benefits pending a hearing," ids="12026449" index="31" url="https://cite.case.law/us/424/319/#p326">id. at 324-25, 96 S.Ct. 893 ; the Court reasoned that such a claim for relief was collateral to the underlying dispute as to whether disability benefits were proper under the Social Security Act. Id. at 330-32, 96 S.Ct. 893.
Similarly, in Bowen v. City of New York , 476 U.S. 467, 473-74, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the plaintiffs alleged that HHS "had adopted an unlawful, unpublished policy" which resulted in wrongful benefit denials and that the undisclosed nature of the policy violated "due process of law." The Court held that the claim was collateral because the plaintiffs "neither sought nor were awarded benefits" under the Social Security Act "but rather challenged the Secretary's failure to follow the applicable regulations." Id. at 483, 106 S.Ct. 2022.[10]
Conversely, in Heckler v. Ringer , 466 U.S. 602, 610, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the plaintiffs alleged that HHS improperly issued a rule that violated both "constitutional due process and numerous statutory provisions." Yet unlike the Eldridge or Bowen plaintiffs, the Ringer plaintiffs sought a declaration that HHS's policy was unlawful and that certain claims were reimbursable under the Medicare Act. Id. at 614, 104 S.Ct. 2013. That, the Court reasoned, was nothing more than "a claim that they should be paid" for certain procedures; as such, the claim was " 'inextricably intertwined' with [their] claims for benefits" under the administrative process. Id. Even though the plaintiffs had alleged certain procedural claims, the relief they sought from those claims was still substantive. Id.
Our circuit applied those decisions in Affiliated Professional , 164 F.3d at 285-86. There, the plaintiff alleged that HHS had violated its "right to due process and equal protection" by terminating its provider status through the improper and arbitrary enforcement of "various Medicare rules and regulations." Id. at 284. We held that the claim was not collateral. In line *503 with Ringer , we noted that the plaintiff sought essentially substantive relief: a reinstatement of its provider status and Medicare payments, plain and simple. Id. at 285. And we explained that, to determine whether the regulations were truly enforced arbitrarily, the court "would necessarily have [had] to immerse itself in those regulations and make a factual determination as to whether [plaintiff] was actually in compliance." Id. at 285-86.[11]
These cases confirm the aforementioned maxims. If the court must examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral. See Ringer , 466 U.S. at 614, 104 S.Ct. 2013 ; Affiliated Prof'l , 164 F.3d at 284-85. And if plaintiffs request relief that is proper under the organic statute-by requesting that benefits or a provider status be permanently reinstated-the claim is not collateral. See Ringer , 466 U.S. at 614, 104 S.Ct. 2013 ; Affiliated Prof'l , 164 F.3d at 284-85. But plaintiffs may bring claims that sound only in constitutional or procedural law (such as the Kelly claim at issue in Eldridge ) and request that benefits be maintained temporarily until the agency follows the statutorily or constitutionally required procedures. Eldridge , 424 U.S. at 330-32, 96 S.Ct. 893 ; Bowen , 476 U.S. at 483, 106 S.Ct. 2022.[12]
Under these principles, Family Rehab's procedural due-process and ultra vires claims are plainly collateral. Like the plaintiffs in Eldridge , Family Rehab seeks only a hearing before the recoupment of its Medicare revenues. In its complaint, Family Rehab does not seek a determination that the recoupments are wrongful under the Medicare Act, thus distinguishing it from Ringer and Affiliated Professional . And Family Rehab's procedural due-process and ultra vires claims will not require the court to wade into the Medicare Act or regulations; those claims only require the court to determine how much process is required under the Constitution and federal law before recoupment. Because Family Rehab asks only that recoupment be suspended until a hearing, and because it raises claims unrelated to the merits of the recoupment, its claims are collateral.
The government's rebuttals are unavailing. First, it contends that by attempting to prevent the recoupment of its Medicare payments, Family Rehab effectively seeks substantive relief. Not so. Family Rehab seeks only the temporary suspension of recoupment until a hearing, which is quite different from a permanent reinstatement of benefits.[13] Second, the government reasons that Family Rehab has put the merits of its underlying Medicare Act claims in dispute through its complaint and motion. But even if Family Rehab's pleadings are inartful, and its motion *504 raises issues not properly before court, we construe pleadings liberally at the Rule 12(b) stage.[14] Ultimately, Family Rehab seeks only the suspension of recoupment before a hearing, which is plainly collateral to the result of that hearing.
2.
Family Rehab has also "raised at least a colorable claim" that erroneous recoupment will "damage [it] in a way not recompensable through retroactive payments." Eldridge , 424 U.S. at 331, 96 S.Ct. 893. According to Family Rehab, if recoupment continues before it gets an ALJ hearing, it will go out of business.[15] Moreover, Family Rehab maintains that its bankruptcy will have detrimental effects on its employees and patients. The government insists that those are not irreparable injuries,[16] but we must "be especially sensitive" to irreparable injury "where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the [rights] they should have been afforded in the first place." Bowen , 476 U.S. at 484, 106 S.Ct. 2022. The combined threats of going out of business and disruption to Medicare patients are sufficient for irreparable injury.[17] Therefore, the court has jurisdiction to hear Family Rehab's procedural due-process and ultra vires claims.
B.
Second, Family Rehab relies on Illinois Council , 529 U.S. at 19, 120 S.Ct. 1084, to assert that jurisdiction lies because § 405"would not simply channel review through the agency, but would mean no review at all." In such situations, jurisdiction is available under 28 U.S.C. § 1331. Ill. Council , 529 U.S. at 17, 120 S.Ct. 1084. This exception is narrow and applies only when channeling a claim through the agency would result in the *505 "complete preclusion of judicial review." Id. at 23, 120 S.Ct. 1084. Thus, Family Rehab must show either that bringing its claim administratively is "a legal impossibility," or that it faces "a serious practical roadblock to having [its] claims reviewed in any capacity, administratively or judicially." Physician Hosps. , 691 F.3d at 655, 659 (internal quotations omitted).
Family Rehab alleges that bringing its claim administratively faces serious obstacles from the colossal backlog in Medicare appeals and HHS's ostensibly Sisyphean attempts to combat the problem. But it is not enough to assert that judicial review will be delayed and that Family Rehab itself will be prejudiced by that delay.[18] Indeed, we have required channeling so long as "there potentially were other parties with an interest and a right to seek administrative review."[19] Given the thousands of ongoing Medicare appeals-including by providers who have come already to our circuit[20] -there is no dearth of third parties with both the incentive and capacity to challenge the timeliness of ALJ hearings. Jurisdiction is not available under § 1331.
C.
Finally, Family Rehab maintains that the court has mandamus jurisdiction. As we held in Wolcott , 635 F.3d at 764, " § 405(h) does not preclude mandamus jurisdiction" under 28 U.S.C. § 1361"to review otherwise unreviewable procedural issues."[21] Section 1361 provides jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." As stated above, because the district court resolved this case at the Rule 12(b)(1) stage, we accept "all well-pleaded facts as true." Wolcott , 635 F.3d at 763 (quoting Gonzalez v. Kay , 577 F.3d 600, 603 (5th Cir. 2009) ).
"[M]andamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." Id. at 766.[22] Such jurisdiction is limited to requests that the "court order the defendant to complete affirmative actions." Id. Conversely, § 1361 does not provide jurisdiction *506 over requests "for other types of relief-such as injunctive relief." Id.
We pause to note that the district court rejected § 1361 as a basis for jurisdiction because Family Rehab has yet to exhaust all other avenues of relief. The government insists that exhaustion is a prerequisite to mandamus jurisdiction, citing Jones v. Alexander , 609 F.2d 778, 781 (5th Cir. 1980). In Jones , we stated that "[t]he test for jurisdiction is whether mandamus would be an appropriate means of relief." Id. Because one element of mandamus relief is the lack of other adequate remedies, ids="1421500" index="69" url="https://cite.case.law/f2d/609/778/#p781">id. , the government reasons that exhaustion is required for mandamus jurisdiction.[23]
Although the government's reading of Jones is not implausible, we disagree. We have cautioned to "avoid tackling the merits under the ruse of assessing jurisdiction."[24] To say that exhaustion is a jurisdictional requirement would only further conflate jurisdiction with the merits.[25] Nor does Jones compel such a result-it is consistent with Jones to relegate exhaustion to the merits and hold that mandamus jurisdiction lies wherever a plaintiff seeks "to compel an officer ... to perform an allegedly nondiscretionary duty owed to the plaintiff." See Wolcott , 635 F.3d at 763. For such requests, mandamus is plainly the "appropriate means of relief," and jurisdiction may obtain. See Jones , 609 F.2d at 781.
But even without a requirement of exhaustion for mandamus jurisdiction, Family Rehab cannot establish § 1361 jurisdiction because it seeks only injunctive, not mandamus, relief. In its complaint, Family Rehab requested that the court enjoin HHS and CMS "from recouping from Family Rehab's Medicare payments." Now on appeal, Family Rehab attempts to re-frame its petition as one for an order that defendants provide it with a timely ALJ hearing. The government rightly notes that that request is found nowhere in the complaint.
Similar to the complaint in Wolcott , 635 F.3d at 767, Family Rehab's complaint asks the court to "prohibit the defendants from acting in a certain manner in the future rather than compel the defendants to affirmatively perform a presently existing duty." Also as in Wolcott , that relief is fundamentally injunctive in nature. Id.[26] Therefore, § 1361 does not confer jurisdiction because Family Rehab's complaint does not seek mandamus relief. Id.
*507 For the first time in its reply brief, Family Rehab characterizes its failure to request mandamus as a mere pleading defect. It asks that we order the district court to permit it to amend its complaint per 28 U.S.C. § 1653.[27] Yet "[w]e will not consider issues raised for the first time in an appellant's reply brief." United States v. Anderson , 5 F.3d 795, 801 (5th Cir. 1993).
Accordingly, the judgment is REVERSED and REMANDED as to Family Rehab's procedural due-process and ultra vires claims and AFFIRMED in all other respects.

The MAC covering Family Rehab during the relevant time was Palmetto GBA, LLC.

If the repayment would constitute hardship, as defined by statute, then the provider may enter a repayment plan with HHS. 42 U.S.C. § 1395ddd(f)(1). Although the government suggests that is a viable option here, Family Rehab insists that a repayment plan is infeasible both because it could not develop one with CMS and because Family Rehab's other contractual obligations preclude that course of action. At the Rule 12(b)(1) stage, we take Family Rehab's allegations as true. See Physician Hosps. of Am. v. Sebelius , 691 F.3d 649, 652 (5th Cir. 2012).

Maria Castellucci, HHS Says It Can't Clear Medicare Appeals Backlog by 2021 Deadline , Modern Healthcare (Mar. 8, 2017), available at http://www.modernhealthcare.com/article/20170308/NEWS/170309902 (discussing a report by HHS made to the U.S. District Court for the District of Columbia). See also Maxmed Healthcare, Inc. v. Price , 860 F.3d 335, 344-45 (5th Cir. 2017) (noting the serious backlog of agency appeals, the lack of resources to deal with the problem, HHS's admissions in federal court, and the "redundant, time-consuming, and costly procedures" that mire providers).

Although § 405(g) is a provision of the Social Security Act, it has been made applicable to Medicare by 42 U.S.C. § 1395ff(b)(1)(A). Cf. Shalala v. Ill. Council on Long Term Care, Inc. , 529 U.S. 1, 12-13, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) ; Physician Hosps. , 691 F.3d at 653 (holding that 42 U.S.C. § 1395ii"makes Section 405(h) applicable to Medicare"). Accordingly, Medicare cases usually are excluded from the general grant of federal-question jurisdiction in 28 U.S.C. § 1331 absent exhaustion of the agency appeals.

See RenCare, Ltd. v. Humana Health Plan of Tex., Inc. , 395 F.3d 555, 557 (5th Cir. 2004) ("A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claim is the Medicare Act." (quoting Heckler v. Ringer , 466 U.S. 602, 606, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) ) ); see also Ill. Council , 529 U.S. at 11, 120 S.Ct. 1084 (noting that § 405 also governs constitutional claims); Physician Hosps. , 691 F.3d at 656 ("The Supreme Court has also explicitly rejected the argument that constitutional challenges are free from Section 405(h)'s requirements." (citing Weinberger v. Salfi , 422 U.S. 749, 760-61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding that a constitutional claim seeking "a judgment directing the Secretary to pay Social Security benefits" arises under the Social Security Act) ) ).

Family Rehab concedes that its substantive due-process and APA claims are not collateral; thus, we must address all three asserted bases of jurisdiction.

Affiliated Prof'l Home Health Care Agency v. Shalala , 164 F.3d 282, 285 (5th Cir. 1999) (per curiam); Eldridge , 424 U.S. at 330-32, 96 S.Ct. 893. There is a first prong of the collateral-claim exception: "[T]here must have been presentment to the Secretary." Affiliated Prof'l , 164 F.3d at 285. There is no dispute that Family Rehab has met this requirement.

Compare, e.g. , Timberlawn Mental Health Sys. v. Burwell , 2015 WL 4868842, at *2, *4 (N.D. Tex. Aug. 13, 2015)with D&G Holdings, LLC v. Burwell , 156 F.Supp.3d 798, 803, 814-15 (W.D. La. 2016).

In Eldridge , the plaintiffs asserted that a hearing consistent with Goldberg v. Kelly , 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), was required before the termination of Social Security disability benefits. 424 U.S. at 325 & n.4, 96 S.Ct. 893 (defining a Kelly hearing as including: "(1) 'timely and adequate notice detailing the reasons for a proposed termination'; (2) 'an effective opportunity [for the recipient] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally'; (3) retained counsel, if desired; (4) an 'impartial' decisionmaker; (5) a decision resting 'solely on the legal rules and evidence adduced at the hearing'; [and] (6) a statement of reasons for the decision and the evidence relied on" (quoting Kelly , 397 U.S. at 266-71, 90 S.Ct. 1011 ) ).

The Court also noted that the nature of the undisclosed policy gave rise to "unique circumstances" such that "there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." Bowen , 476 U.S. at 485, 106 S.Ct. 2022.

See also Edwards v. Burwell , 657 Fed.Appx. 242, 244-45 (5th Cir. 2016) (per curiam) (applying Affiliated Professional to substantially similar facts and claims), cert. denied , --- U.S. ----, 137 S.Ct. 639, 196 L.Ed.2d 521 (2017) ; Marsaw v. Thompson , 133 Fed.Appx. 946, 948 (5th Cir. 2005) (same).

For these reasons, the analysis in D&G Holdings is persuasive.

Compare Eldridge , 424 U.S. at 324-25, 96 S.Ct. 893, with Ringer , 466 U.S. at 614, 104 S.Ct. 2013. Similarly, the government insists that Family Rehab is gaming our jurisdiction through clever labeling. But the fact that Family Rehab seeks only the temporary abatement of recoupment barring certain procedures is far from a labeling act.

See Lowrey v. Tex. A & M Univ. Sys. , 117 F.3d 242, 247 (5th Cir. 1997). To obtain a preliminary injunction, the plaintiff must establish a likelihood of success on the merits. See Affiliated Prof'l , 164 F.3d at 285. But because Family Rehab seeks only to prevent recoupment under it receives certain procedures, a likelihood of success on the merits would require showing that those procedures are required before recoupment-rather than showing that the outcome of those procedures will likely be favorable in a specific case. See Eldridge , 424 U.S. at 335, 96 S.Ct. 893 (describing the factors used to determine "the specific dictates of due process").

The government disputes that averment, but at this stage Family Rehab need raise only a "colorable" claim. Eldridge , 424 U.S. at 331, 96 S.Ct. 893. "The requirement of a colorable claim is not a stringent one." Abraham v. Exxon Corp. , 85 F.3d 1126, 1129 (5th Cir. 1996) (quoting Panaras v. Liquid Carbonic Indus. Corp. , 74 F.3d 786, 790 (7th Cir. 1996) ). A plaintiff need show nothing more than "some possible validity." Richardson v. United States , 468 U.S. 317, 326 n.6, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). This Family Rehab has done. As it alleges, Medicare payments represent 94% of its revenues, while it makes approximately $6 million annually and faces over $7.5 million in recoupment; thus recoupment will decrease its revenues by about 91%.

In the alternative, the government contends that Family Rehab would not face irreparable injury if it either escalates its administrative appeal to the Appeals Council, cf. 42 C.F.R. § 405.1100, or seeks a repayment plan with CMS, cf. 42 U.S.C. § 1395ddd(f)(1). But again, Family Rehab alleges that a repayment plan is infeasible, and the district court expressed incredulity at the notion that CMS would agree to any repayment plan that could stave off Family Rehab's financial ruin. And the timeline for escalation-combined with the massive backlogs at CMS-means that escalation would be similarly insufficient to avoid irreparable injury.

Cf. Affiliated Prof'l , 164 F.3d at 286 (indicating that the potential loss of health care to Medicare patients may help establish irreparable injury under Eldridge ).

See Ill. Council , 529 U.S. at 13, 120 S.Ct. 1084 (recognizing that "individual, delay-related hardship[s]" are part of the cost of channeling).

Physician Hosps. , 691 F.3d at 657. In Physician Hospitals , 691 F.3d at 652, a group of physician-owned health care providers planning to build a new hospital challenged a Medicare rule prohibiting reimbursement to such hospitals. The providers argued that § 405 effectively precluded judicial review of their claims because channeling them through the agency would require it first to build the hospital at great cost and then file a reimbursement request. Id. at 656. We held that the providers failed to show that no similarly situated entity could bring the same claims or whether it would be economically feasible for other hospitals to challenge the regulation. Id. at 658. Family Rehab's situation is similar in many respects. See also Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of HHS , 455 F.3d 500, 504-05 (5th Cir. 2006) ; Council for Urological Interests v. Sebelius , 668 F.3d 704, 712-13 (D.C. Cir. 2011).

See, e.g. , Maxmed Healthcare, Inc. , 860 F.3d at 339-40 (explaining that the provider had exhausted appellate review and then sought judicial review of the Appeals Council's decision).

As explained in Wolcott , 635 F.3d at 765, the federal circuits are in near-unanimous agreement on this point.

See also Ingalls Shipbuilding, Inc. v. Asbestos Health Claimants , 17 F.3d 130, 132 (5th Cir. 1994) ; McClain v. Pan. Canal Comm'n , 834 F.2d 452, 454 (5th Cir. 1987).

The other two elements for warrant mandamus relief are that "the plaintiff must have a clear right to the relief, [and] the defendant must have a clear duty to act." Jones , 609 F.2d at 781.

Wolcott , 635 F.3d at 763 (quoting Jones , 609 F.2d at 781 ); see also McClain , 834 F.2d at 454.

Moreover, our caselaw generally has tackled the jurisdictional inquiry as distinct from the merits. Thus, even in Jones , 609 F.2d at 781, 783, the court found that mandamus jurisdiction was proper but that mandamus was inappropriate. See also McClain , 834 F.2d at 455, 460 (same); Carter v. Seamans , 411 F.2d 767, 773-75 (5th Cir. 1969) (per curiam) (same); cf. also Ingalls , 17 F.3d at 132-34 (breaking out the inquiry but finding that mandamus was appropriate).

Thus, in Wolcott , 635 F.3d at 767, the court held that asking "the court to order the defendants to cease denying its new claims for reasons that have been held invalid in previous administrative decisions" is injunctive in nature. There is no material difference between that petition and Family Rehab's complaint. Conversely, Wolcott found mandamus jurisdiction over a request that "compel the defendants to process and pay claims ... adhere to payment deadlines ... [and] remove [the plaintiff] from prepayment review." Id. at 766 ; see also Ingalls , 17 F.3d at 132 (similar); McClain , 834 F.2d at 454 (similar). Family Rehab's complaint does not contain such a demand.

Section 1653 provides, "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."