EWING WERLEIN, JR., UNITED STATES DISTRICT JUDGE
Pending is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction *583 and Failure to State a Claim Upon Which Relief Can Be Granted (Document No. 9).[1] After carefully considering the motion, response, and applicable law, the Court concludes as follows.
I. Background
Plaintiff Infinity Healthcare Services, Inc. ("Plaintiff") is a home health agency located in Houston that participates as a provider in the Medicare program.[2] In June 2017, Health Integrity, LLC, a Zone Program Integrity Contractor ("ZPIC") for Medicare, reviewed 30 claims submitted by Plaintiff between August 2014 and July 2016 and denied 29 of them.[3] The ZPIC found an actual overpayment of $65,256.23 based on those 29 claims, and extrapolated a total overpayment of $648,843 to Plaintiff during the relevant time period.[4] Palmetto GBA, LLC, a Medicare Administrative Contractor ("MAC"), notified Plaintiff of the overpayment on June 22, 2017.[5] Plaintiff then entered what the Fifth Circuit recently described as "the harrowing labyrinth of Medicare appeals":
A provider must go through a four-level appeals process. First, it may submit to the MAC a claim for redetermination of the overpayment. 42 U.S.C. § 1395ff(a)(3)(A). Second, it may ask for reconsideration from a Qualified Independent Contractor ("QIC") hired by [the Centers for Medicare and Medicaid Services ("CMS") ] for that purpose. Id. § 1395ff(c), (g) ; 42 C.F.R. § 405.904(a)(2). If the QIC affirms the MAC'S determination, the MAC may begin recouping the overpayment by garnishing future reimbursements otherwise due the provider. 42 U.S.C. § 1395ddd(f)(2) ; 42 C.F.R. § 405.371(a) (3).
Third, the provider may request de novo review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS. 42 U.S.C. § 1395ff(d) ; 42 C.F.R. § 405.1000(d). The ALJ stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. 42 C.F.R. § 405.1036(c) - (d). The ALJ "shall conduct and conclude a hearing ... and render a decision ... not later than" 90 days after a timely request. 42 U.S.C. § 1395ff(d)(1)(A). Fourth, the provider may appeal to the Medicare Appeals Council ("Council"), an organization independent of both CMS and OMHA. 42 C.F.R. § 405.1100. The Council reviews the ALJ's decision de novo and is similarly required to issue a final decision within 90 days. Id. Furthermore, if the ALJ fails to issue a decision within 90 days, the provider may "escalate" the appeal to the Council, which will review the QIC's reconsideration. Id.
Family Rehab., Inc. v. Azar, 886 F.3d 496, 499-500 (5th Cir. 2018) (footnote omitted).
Like the plaintiff in Family Rehab, Plaintiff completed the first two stages of the appeal process. First, Plaintiff requested a redetermination, and the MAC
*584 sustained the overpayment decision in September 2017 in a "fully unfavorable" redetermination decision.[6] Plaintiff then requested a reconsideration in November 2017, and the QIC, C2C Innovative Solutions, Inc., issued another "unfavorable" decision in April 2018.[7] Plaintiff requested an ALJ hearing on the QIC's decision on May 29, 2018.[8] As in Family Rehab, however, the ALJ hearing and decision that were statutorily required within 90 days have not occurred, and because of the massive and still-growing backlog within the Department of Health and Human Services, there is an expected delay of three to five years before Plaintiff will receive a ruling.[9] Faced with the threat of recoupment to collect the overpayment--which has since begun--Plaintiff filed this suit against Defendant Alex M. Azar II in his official capacity as Secretary of the United States Department of Health and Human Services ("Defendant"), seeking declaratory and injunctive relief holding that Plaintiff's statutory and Due Process rights have been violated and suspending recoupment until after Plaintiff receives an ALJ hearing, and also seeking mandamus relief prohibiting Defendant from using sampling to calculate Plaintiff's overpayment.[10] Defendant moves to dismiss, arguing that the Court lacks subject matter jurisdiction because Plaintiff has not exhausted the statutory appeal process and that Plaintiff fails to state a claim upon which relief can be granted.[11]
II. Subject-Matter Jurisdiction
Under Rule 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b) (1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. Id."When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." Id. (citation omitted).
In Counts One, Two, Three, Four, and Six, Plaintiff alleges claims for (1) violation of procedural due process, (2) violation of the Medicare Act, (3) violation of the statutory limitation on recoupment, (4) ultra vires , and (5) declaratory judgment.[12] All of these claims challenge Defendant's recoupment of overpayments while Defendant is unable to provide the statutorily required administrative review of Plaintiff's appeal. In Family Rehab, the Fifth Circuit this year reversed a district court's dismissal for lack of subject matter jurisdiction of claims substantially identical to these. 886 F.3d 496. As the court explained, *585 although Medicare cases are usually excluded under 42 U.S.C. § 405 from the general grant of federal-question jurisdiction in 28 U.S.C. § 1331 if the plaintiff has not exhausted its agency appeals, federal courts have jurisdiction under the collateral-claims exception over "claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a postdeprivation hearing.' " Id. at 501 (citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976) ). Thus, " 'when a plaintiff asserts a collateral challenge that cannot be remedied after the exhaustion of administrative review,' courts shall deem exhaustion waived." Id. (quoting Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999) ).
"For a claim to be collateral, it must not require the court to 'immerse itself' in the substance of the underlying Medicare claim or demand a 'factual determination' as to the application of the Medicare Act"; rather, "the claim must seek some form of relief that would be unavailable through the administrative process." Id. at 501-02 (citations omitted). "If the court must examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral." Id. at 503 (citing Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984) ; Shalala, 164 F.3d at 284-85 ). "But plaintiffs may bring claims that sound only in constitutional or procedural law ... and request that benefits be maintained temporarily until the agency follows the statutorily or constitutionally required procedures." Id. (citations omitted). Applying these principles, the Fifth Circuit held that the claims in Family Rehab were "plainly collateral":
Like the plaintiffs in Eldridge, Family Rehab seeks only a hearing before the recoupment of its Medicare revenues. In its complaint, Family Rehab does not seek a determination that the recoupments are wrongful under the Medicare Act .... And Family Rehab's procedural due-process and ultra vires claims will not require the court to wade into the Medicare Act or regulations; those claims only require the court to determine how much process is required under the Constitution and federal law before recoupment. Because Family Rehab asks only that recoupment be suspended until a hearing, and because it raises claims unrelated to the merits of the recoupment, its claims are collateral.
... Ultimately, Family Rehab seeks only the suspension of recoupment before a hearing, which is plainly collateral to the result of that hearing.
Id. at 504. Plaintiff's claims in Counts One through Four and Six likewise seek only to suspend recoupment until Plaintiff receives its hearing, and do not challenge the merits of the recoupment. Accordingly, like the claims in Family Rehab, they are collateral.
Turning to the second prong of the collateral-claims exception, the Fifth Circuit in Family Rehab held that "[t]he combined threats of going out of business and disruption to Medicare patients are sufficient for irreparable injury" such that full relief could not be obtained through a post-deprivation hearing. Id. Here, Plaintiff produces evidence that at this time is uncontroverted that continued recoupment of the Medicare overpayment without access to a timely hearing will force Plaintiff to shut down and file bankruptcy, that Plaintiff has already lost most of its employees, and that "all patients have already been or must soon be transferred to other *586 providers on an emergency basis."[13] Thus, as in Family Rehab, Plaintiff has thus far made a showing that full relief cannot be obtained through a post-deprivation hearing. Accordingly, Plaintiff has established that the Court has § 1331 federal question jurisdiction under the collateral-claims exception over Plaintiff's claims in Counts One, Two, Three, Four, and Six.
Plaintiff's claim for mandamus in Count Five, however, is not collateral. Unlike Plaintiff's other claims, Count Five does not seek to suspend recoupment, but rather alleges that "this Court should compel Defendant to not use sampling to calculate this overpayment for failure of its duty to make available essential sampling documentation necessary for a Due Process challenge."[14] Adjudicating such a claim would require the Court to examine the merits of the underlying dispute, in which Plaintiff challenges the sampling methodology used to calculate Plaintiff's total overpayment.
Nor does the Court have mandamus jurisdiction under 28 U.S.C. § 1361. "[M]andamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 766 (5th Cir. 2011) (citations omitted). "Such jurisdiction is limited to requests that the 'court order the defendant to complete affirmative actions,' " and " § 1361 does not provide jurisdiction over requests 'for other types of relief--such as injunctive relief.' " Family Rehab, 886 F.3d at 505-06 (citing Wolcott, 635 F.3d at 766 ). "Mandamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists." Wolcott, 635 F.3d at 768 (citations omitted); see also ids="4030556" index="29" url="https://cite.case.law/f3d/635/757/#p766">id. ("Mandamus is only appropriate when the duty is 'so plainly prescribed as to be free from doubt.' ") (citation omitted).
Plaintiff cites to no authority establishing as a matter of law that Defendant has a clearly established duty--so plainly established as to be free from doubt--not to use a methodology of random sampling when reviewing Plaintiff's paid Medicare claims and extrapolating from the sampling results the total amounts, if any, of overpayments. Accordingly, Plaintiff has not met its burden to establish that the Court has subject matter jurisdiction over Plaintiff's mandamus claim in Count Five, and that claim is dismissed without prejudice for lack of subject matter jurisdiction.[15]
III. Order
It is therefore
ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted (Document No. 9) is GRANTED as to Plaintiff's mandamus claim in Count Five, which claim is DISMISSED without prejudice for lack of subject matter jurisdiction, and Defendant's motion is otherwise DENIED.

Also pending is Plaintiff's Renewed Motion for Temporary Restraining Order (Document No. 16), which by agreement of the parties has been converted to a motion for preliminary injunction, and which is set for an evidentiary hearing at 10:00 a.m. on Wednesday, October 31, 2018. See Document No. 25 (Minute Order setting hearing). Plaintiff's Motion for Defendant's Expedited Response and to Set an Expedited Hearing on Plaintiff's Motion for Temporary Restraining Order (Document No. 17) is therefore DENIED AS MOOT.

Document No. 4 ¶ 4 (1st Am. Compl.).

Id. ¶ 26.

Id.

Id. ¶ 27.

Id. ¶¶ 28, 30.

Id. ¶¶ 31-32.

Id. ¶ 34.

Id. ¶ 35; see also Family Rehab, 886 F.3d at 500 (observing in a similar case that "an ALJ hearing is not forthcoming--not within 90 days, and not within 900 days. According to Family Rehab--and effectively conceded by the government--it will be unable to obtain an ALJ hearing for at least another three to five years . And based on HHS's own admissions to a federal judge, the logjam of Medicare appeals shows no signs of abating anytime soon.").

Document No. 1 (Compl.).

Document No. 9.

Document No. 4 ¶¶ 38-62,70-75.

Document No. 16-1 ¶¶ 11-16 (Decl. of Darlington Ofoefule).

Document No. 4 ¶ 69.

Defendant's argument that Plaintiff fails to state a claim upon which relief can be granted is limited to Plaintiff's mandamus claim, see Document No. 9 at 12-14, and the Court therefore need not address the parties' arguments under Rule 12(b)(6).