# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30925

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2019

Lyle W. Cayce
Clerk

D&G HOLDINGS, L.L.C., formerly operating as Doctors Lab,

      Plaintiff - Appellant

v.

ALEX M. AZAR, II, SECRETARY, U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-1045

Before CLEMENT, DUNCAN, and OLDHAM, Circuit Judges.

PER CURIAM:*

The parties have asked us to decide a jurisdictional question regarding a claim for repayment of Medicare benefits wrongly recouped by a Medicare Administrative Contractor ("MAC"). The question centers around 42 U.S.C. § 405(h)—a provision specifying the jurisdictional avenues available for Medicare claims. In *In re Benjamin*, we recently expounded upon § 405(h)'s

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30925

meaning. 924 F.3d 180 (5th Cir. 2019). As the district court did not have the benefit of *Benjamin*'s guidance, we vacate its judgment and remand for reconsideration in light of *Benjamin*.

I.

D&G Holdings, LLC, is a Medicare supplier that provides lab services to nursing homes and other homebound people in Louisiana. In 2011, a Medicare Zone Program Integrity Contractor ("ZPIC") audited D&G's Medicare claims. Three years later, the ZPIC concluded that D&G had overbilled the Medicare program and had consequently received $8.3 million in excess Medicare reimbursements. Novitas Solutions, Inc., the MAC for Louisiana, relied on the ZPIC's finding and instructed D&G to refund the full amount. D&G challenged Novitas's overpayment determination through the "harrowing labyrinth of Medicare appeals." *Family Rehab. Inc. v. Azar*, 886 F.3d 496, 499 (5th Cir. 2018).

This court recently summarized that appeals process as follows:

> A provider must go through a four-level appeals process. First, it may submit to the MAC a claim for redetermination of the overpayment. Second, it may ask for reconsideration from a Qualified Independent Contractor ("QIC") hired by [the Centers for Medicare and Medicaid Services ("CMS")] for that purpose. If the QIC affirms the MAC's determination, the MAC may begin recouping the overpayment by garnishing future reimbursements otherwise due the provider.
>
> Third, the provider may request *de novo* review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA) . . . . The ALJ stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. The ALJ "shall conduct and conclude a hearing . . . and render a decision . . . not later than" 90 days after a timely request. 42 U.S.C. § 1395ff(d)(1)(A). Fourth, the provider may appeal to the Medicare Appeals Council ("Council"), an organization independent of both CMS and OMHA. The Council reviews the ALJ's decision *de novo* and is similarly required to

No. 18-30925

issue a final decision within 90 days. Furthermore, if the ALJ fails
to issue a decision within 90 days, the provider may "escalate" the
appeal to the Council, which will review the QIC's reconsideration.

*Id.* at 499–500 (footnote omitted) (internal citations omitted). If a provider is still unsatisfied after this lengthy administrative-appeals process, it can seek judicial review under 42 U.S.C. § 405(g) of the Council's final decision in district court. 42 U.S.C. § 1395ff(b)(1)(A).

For over three years, D&G slogged through this administrative morass. It emerged victorious: The Council overturned the overpayment determination. When an overpayment determination is overturned, the money recouped from a Medicare provider during the administrative-appeals process must be returned. 42 U.S.C. § 1395ddd(f)(2)(B). D&G has waited for this repayment. It has never come.

So D&G resorted to the federal courts. It sued the Secretary of the Department of Health and Human Services ("Secretary"), invoking the district court's jurisdiction under § 405(g). D&G alleged that the Secretary must return the recouped money under § 1395ddd(f)(2)(B). D&G further alleged that the total amount recouped—and the amount it was therefore owed under § 1395ddd(f)(2)(B)—was $4.1 million, plus interest. On the same day D&G filed its complaint, Novitas without explanation made a single $1.8 million payment to D&G.

The district court dismissed D&G's complaint for lack of subject matter jurisdiction under § 405(g). This appeal followed. D&G asks us to find jurisdiction under § 405(g) or, in the alternative, allow it to add a mandamus claim to its complaint.

No. 18-30925

II.

On May 10, 2019, this court issued *In re Benjamin*. There, we interpreted both the second and third sentences of 42 U.S.C. § 405(h).[1] The gist of our decision was this: The third sentence strips federal jurisdiction under only the listed statutory provisions—§§ 1331 and 1346—not under unlisted ones, such as bankruptcy jurisdiction under 28 U.S.C. § 1334. 924 F.3d at 184–88. The second sentence, in turn, channels certain claims under Title II into § 405(g) as the exclusive path for obtaining judicial review. But that is true only for claims falling within its scope. The only claims that fall within its scope are claims challenging a disability determination by the Commissioner of Social Security for which § 405(b)(1) provides a hearing. *Id.* at 188–89. For claims falling outside of the second sentence's scope, a litigant may altogether avoid § 405(g)'s channeling and exhaustion requirements. At the same time, however, a litigant who takes himself outside of § 405(g) then needs an independent basis of jurisdiction. That is, § 405(g) jurisdiction is unavailable for such claims. *Id.*

Because *Benjamin* could impact D&G's claim,[2] we vacate the district court's judgment and remand for reconsideration in light of *Benjamin*. On remand, the district court should allow D&G to amend its complaint to add a

---

[1] Section 405(h) states:

> [1] The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. [2] No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [provided in § 405(g)]. [3] No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [Title II of the Social Security Act].

[2] While *Benjamin* is a Social Security case, the Medicare Act incorporates the same provisions at issue in *Benjamin*. *See* 42 U.S.C. §§ 1395ff(b)(1)(A) (incorporating § 405(b) and (g)); 1395ii (incorporating § 405(h) along with other provisions).

mandamus claim under 28 U.S.C. § 1361, which *Benjamin* makes clear would not be barred—or in any way limited—by either the second or third sentence of § 405(h).

We do not address the correctness of the district court's July 27, 2018 opinion, save for one aspect. The district court thought that Novitas's decision to issue D&G a check for $1.8 million was akin to an initial determination. This characterization is wrong.

Novitas's repayment decision does not meet the Medicare Act's definition of an "initial determination." Under § 1395ff(a), initial determinations include an "initial determination of whether an individual is entitled to benefits" and "the amount of benefits available to the individual" under Parts A and B of the Medicare Act.  42 U.S.C. § 1395ff(a)(1)(A)–(B). An initial determination also includes "an initial determination by the Secretary that payment may not be made, or may no longer be made, for an item or service" under Parts A and B. *Id.* § 1395ff(a)(1)(C). Here, Novitas determined (by unknown means) how much money it had garnished from D&G and sent a check. Determining that amount has nothing to do with whether D&G was entitled to certain benefits or whether a payment should not be made or no longer made for a particular service. Instead, it involves a determination regarding the amount of funds that Novitas previously allocated to pay D&G's Medicare debt. *See* 42 C.F.R. § 405.370 (defining recoupment as "[t]he recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness").

Additionally, Medicare providers must be given written notice of an initial determination. *See, e.g.*, 42 U.S.C. § 1395ff(a)(2)(A), (a)(4); 42 C.F.R. § 405.921. No party contends that Novitas sent a written notice to D&G regarding its repayment decision. In fact, the Secretary's counsel at oral argument conceded that she was unaware of any documentation or explanation

regarding the $1.8 million check Novitas sent to D&G. As best we can tell, it appears that Novitas picked the number out of thin air. What is worse, its affiant (Shaena Parker) admits the amount was wrong. All this makes one thing inescapably clear: Neither the Secretary nor Novitas seem to have any idea what they are doing or what is going on. It is inexcusable that the Secretary would allow Novitas to wield the sovereign authority of the United States to seize money from a private company but then be utterly unable to give an accounting for the amount pillaged.

That said, it is for the district court to determine what effect our classification of Novitas's repayment determination has on D&G's claim. But we note that it would likely be relevant to the § 405(g) analysis under *Benjamin* and to whether D&G has an adequate alternative remedy that could defeat a mandamus claim.

\* \* \*

For the foregoing reasons, we VACATE the district court's judgment and REMAND for proceedings consistent with this opinion.