# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2020

Lyle W. Cayce
Clerk

No. 19-30480

SUPREME HOME HEALTH SERVICES, INCORPORATED;
EMILY WINSTON,

      Plaintiffs - Appellants

v.

ALEX M. AZAR, II, SECRETARY, U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES; SEEMA VERMA, Administrator, on behalf of Centers
for Medicare and Medicaid Services; PALMETTO GBA, L.L.C.,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:18-CV-1370

Before KING, JONES, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge: *[1]

Supreme Home Health Services, Inc. ("Supreme") appeals the dismissal of its claims against Alex M. Azar, Secretary of the U.S. Department of Health and Human Services ("HHS"); Seema Verma, Administrator of the Centers for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Judge Costa concurs in the judgment.

No. 19-30480

Medicare and Medicaid Services ("CMS");[2] and Palmetto GBA, L.L.C.  For the following reasons, we AFFIRM.

## I.  Background

Supreme, a home health service provider, has been enrolled as a Medicare provider since 1983.  In 2012, AdvanceMed, a Zone Program Integrity Contractor ("ZPIC"), reviewed a sample of 318 Medicare claims submitted by Supreme after receiving an anonymous complaint about Supreme.  The ZPIC found "numerous billing errors," including claims where the medical documentation did not support the medical necessity of the services provided and codes that were inappropriately billed at a higher level than needed.  The ZPIC determined that 66.37% of Supreme's claims were inappropriately billed and, after extrapolating the sample, calculated a total overpayment of $1,739,569.00.

Under Medicare regulations, a party may challenge a ZPIC's initial determination through four different stages of administrative review: (1) redetermination by a contractor, 42 C.F.R. §§ 405.940–.958; (2) reconsideration by a Qualified Independent Contractor ("QIC"), *id.* §§ 405.902, 405.960–.978; (3) a hearing in front of an Administrative Law Judge ("ALJ"); *id.* §§ 405.902, 405.1000–1058; and (4) review by the Medicare Appeals Council (the "Council"), *id.* §§ 405.1100–.1140.

In November 2012, Supreme requested redetermination of the overpayment, which stayed recoupment of the overpayment amount. Palmetto, the Medicare contractor, issued an unfavorable redetermination in January 2013.

---

[2] CMS is an agency within HHS.  We collectively refer to both as "HHS" when addressing the governmental defendants.

2

No. 19-30480

In March 2013, Supreme appealed to the second level of the administrative process by seeking reconsideration, again staying recoupment. The following February, the QIC issued a "partially favorable" decision. After Supreme submitted additional evidence, the QIC determined that Supreme had shown good cause to reopen the appeal. Then, in May 2015, the QIC issued a partially favorable decision determining that some of the claims did not meet the Medicare coverage criteria but that some of the previously denied claims should be covered. Supreme's overpayment amount was consequently reduced by $20,741.27.

In July 2015, Supreme filed an appeal to an ALJ. If a provider challenges an overpayment determination, then CMS may begin recouping the overpayment after a QIC issues a reconsideration decision but before an ALJ hearing. *See* 42 U.S.C. § 1395ddd(f)(2)(A). Further, as a Medicare Services provider, Supreme had previously certified that any overpayments it received could "be recouped by Medicare through the withholding of future payments." While Supreme awaited an ALJ hearing, CMS began recouping the overpayment amount plus interest, for a total of $2,357,657.83,[3] in monthly installments under a payment plan.[4]

The Medicare statute provides specific timeframes for each stage of the appeals process: redetermination shall be concluded within sixty days, 42 U.S.C. § 1395ff(a)(3)(C)(ii); reconsideration shall generally conclude within sixty days, *id.* § 1395ff(c)(3)(C)(i); an ALJ shall conduct a hearing and render a decision within ninety days, *id.* § 1395ff(d)(1)(A); and the Council shall review the ALJ's decision within ninety days, *id.* § 1395ff(d)(2)(A).

---

[3] Supreme owed a principal of $1,718,827.73, plus interest of $638,830.10.

[4] Supreme requested and received a five-year extended repayment schedule—the longest term permitted by statute—which CMS approved.

3

Unfortunately, HHS currently faces an immense backlog of Medicare appeals, and these deadlines are routinely missed. Providers wait years before getting a hearing before an ALJ, and the Council's review is similarly fraught with delay. "[I]f the ALJ fails to issue a decision within 90 days," the statute permits "the provider" to "'escalate' the appeal to the Council, which will review the QIC's reconsideration." *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018); 42 C.F.R. § 405.1100. Supreme did not seek escalation.

More than three years after requesting an ALJ hearing, Supreme filed suit in federal district court in October 2018. Supreme raised four counts: (1) violation of procedural due process, (2) violation of substantive due process, (3) ultra vires action, and (4) preservation of its rights under §§ 704 and 705 of the Administrative Procedure Act ("APA"). Supreme sought a temporary restraining order and a preliminary injunction requiring CMS to stop collecting the overpayment without an ALJ hearing.

HHS moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. Palmetto also moved to dismiss for failure to state a claim, lack of standing, and improper service.

The district court denied the TRO and referred the motions to dismiss to the magistrate judge. The magistrate judge recommended that the district court dismiss without prejudice Supreme's substantive due process and APA claims for lack of subject-matter jurisdiction. The magistrate judge determined that it had subject-matter jurisdiction over the procedural due process and ultra vires claims. It then converted the motion to dismiss into one for summary judgment and dismissed those claims on their merits. The district court considered the parties' written objections and then adopted the report and recommendation in full.

Supreme now appeals. It asserts that the district court has subject-matter jurisdiction over its procedural due process and ultra vires claims, erred

No. 19-30480

when it considered a declaration submitted by HHS, and has federal question jurisdiction over all of its claims pursuant to 28 U.S.C. § 1331.

## II.  Discussion

### A.  Supreme's Procedural Due Process and Ultra Vires Claims

Courts generally may not assume jurisdiction over a Medicare overpayment determination until the administrative appeals process is complete.  *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5, 24 (2000).  But the collateral-claims exception allows courts to entertain not-yet-exhausted procedural due process and ultra vires claims when (1) the claims are "'entirely collateral' to a substantive agency decision" and (2) the party assuming the claims cannot obtain "full relief" at a post-deprivation hearing.  *Family Rehab*, 886 F.3d at 501 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330–32 (1976).

Supreme erroneously contends that the district court erred in dismissing its claims after concluding that Supreme failed to satisfy the *Eldridge* collateral-claim exception.  In fact, the court determined that Supreme satisfied the exception and that the court therefore had subject-matter jurisdiction over the procedural due process and ultra vires claims.  Because the court concluded that it had subject matter jurisdiction, Supreme's arguments on this matter are misplaced.

Before affirming the district court's grant of summary judgment on the merits, we independently assess whether subject-matter jurisdiction exists over these claims and conclude that it does.  Supreme's allegations closely mirror those that this court found jurisdiction over in *Family Rehab*.  There, a Medicare contractor informed Family Rehab, a Medicare provider, that it planned to begin recoupment. *Family Rehab*, 886 F.3d at 500.  An ALJ hearing was years away.  Family Rehab sought injunctive relief in federal court to suspend the recoupment until its ALJ hearing occurred.  *Id.* at 503.  Because

Family Rehab's procedural due process and ultra vires claims were unrelated to the merits of its case, we held them to be collateral. *Id.* Additionally, Family Rehab alleged that it faced bankruptcy due to the recoupment, which would not only shut down the business but also affect its employees and patients. *Id.* at 504. These allegations amounted to a "colorable claim" that Family Rehab faced "irreparable injury." *Id.* (internal quotation marks and citation omitted).

Supreme similarly seeks to pause recoupment until it receives a hearing without asking for any substantive determination about the overpayment dispute. Its claims are accordingly collateral. Supreme also alleged in its complaint that it would be "force[d] out of business" and that its closing would harm its patients. As in *Family Rehab*, this raises a colorable claim of irreparable harm. For these reasons, we agree that the district court had subject-matter jurisdiction over Supreme's procedural due process and ultra vires claims. We also affirm the district court's grant of summary judgment without reaching the merits because Supreme abandoned those issues in its opening brief. *Yohey v. Collins,* 985 F.2d 222 (5th Cir. 1993).

## B. The District Court's Consideration of Evidence and Conversion to Summary Judgment

Supreme avers that the district court erred when it considered a declaration submitted by HHS before granting summary judgment on the procedural due process and APA claims. According to Supreme, the court inappropriately took judicial notice of or incorporated by reference documents not referred to in its complaint. Supreme further contends that the district court erred in considering evidence to convert HHS's motion to one for summary judgment. It is not entirely clear whether Supreme believes that the district court erred in its subject-matter jurisdiction analysis or when it considered the claims on the merits, but we find no error at either stage.

When considering subject-matter jurisdiction, the district court concluded that Supreme satisfied the collateral-claim exception with regard to its procedural due process and ultra vires claims.  The district court did note that evidence in the record cast doubt on whether Supreme would truly be in such a precarious financial position that its injuries could not be remedied at a post-deprivation hearing.  Notwithstanding this evidence, the court recognized that "limited to the allegations of the complaint," it must find the collateral-claim exception satisfied.  Accordingly, the district court's actual holding on subject-matter jurisdiction was based solely on the face of the complaint without consideration of the documents at issue.  The district court's holding on this issue did not rely on extrinsic evidence, and we find no error.

Having determined that subject-matter jurisdiction existed, the court went on to consider the merits.  At that point, it converted HHS's Rule 12(b)(6) motion into one for summary judgment and dismissed the claims on their merits.  If matters outside the pleadings are presented in connection with a Rule 12(b)(6) motion and the court does not exclude them, then the court must treat the motion as one for summary judgment, provided that the parties are given the opportunity to present pertinent materials.  FED. R. CIV. P. 12(d); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993).  Supreme does not allege that the district court failed to provide an opportunity to present pertinent evidence, and our precedent supports finding that the court did so.  *See Hager v. NationsBank N.A.*, 167 F.3d 245, 247 n.1 (5th Cir. 1999) (plaintiff received notice that the court could view defendant's motion as one for summary judgment when defendant filed its motion with an attached affidavit, and the district court did not rule on the motion for over two months).  Thus, Supreme has not shown that the court's conversion of the motion was in error.

## C. Federal Question Jurisdiction

Supreme also contends that general federal-question jurisdiction should exist over its claims pursuant to 28 U.S.C. § 1331 because the Medicare appeals backlog effectively denies any review.

This court ordinarily reviews a dismissal for lack of subject-matter jurisdiction de novo. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). But if a party was advised that it must file written objections to a magistrate judge's recommendation and failed to do so, then we review only for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017). To succeed under plain error review, a party "must show (1) an error; (2) that is plain or obvious; (3) that affects [its] substantial rights." *Id*.

Here, the parties were advised that objections to the report and recommendation must be filed. Though Supreme filed some written objections, it failed to object to the dismissal of its substantive due process and APA claims for lack of jurisdiction under § 1331. Accordingly, we review for plain error.

The Supreme Court has made clear that 42 U.S.C. § 405(h), as incorporated by 42 U.S.C. § 1395ii, generally bars suits arising under the Medicare laws from being brought under federal-question jurisdiction. *Ill. Council*, 529 U.S. at 5 (requiring providers to proceed "through the special review channel that the Medicare statutes create"). Claims must first be "channeled through" the administrative review process. *Id*. at 23. A plaintiff may invoke § 1331 in a particular set of cases, however, where the bar against jurisdiction "would not lead to channeling of review through the agency but would mean no review at all." *Id*. at 17. "This exception is narrow and applies only when channeling a claim through the agency would result in the '*complete* preclusion of judicial review.'" *Family Rehab*, 886 F.3d at 504–05 (quoting *Ill. Council*, 529 U.S. at 23). But we recently held that the delay caused by the "colossal backlog in Medicare appeals" is not enough to provide jurisdiction

under § 1331. *Family Rehab*, 886 F.3d at 505. Based on our precedent, the district court's determination that federal-question jurisdiction did not exist was not in error (and was certainly not plain error).

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Supreme's claims.