**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BLUE VALLEY HOSPITAL, INC.,

     Plaintiff - Appellant,

v.

ALEX M. AZAR, II, in his official
capacity as Secretary, United States
Department of Health and Human Services;
SEEMA VERMA, Administrator for the
Center of Medicare and Medicaid Services;
JEFF HINSON, Regional Administrator for
(Region 7) the Center for Medicare and
Medicaid Services,

     Defendants - Appellees.

No. 18-3117

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:18-CV-02176-JAR-GLR)**
_____

Curtis L. Tideman (Andrew J. Ricke with him on the briefs), Lathrop Gage LLP,
Overland Park, Kansas, for Plaintiff-Appellant.

Robin R. Anderson, Assistant United States Attorney (Stephen R. McAllister, United
States Attorney, and Christopher Allman, Assistant United States Attorney, with her on
the brief), Office of the United States Attorney, Kansas City, Kansas, for Defendants-
Appellees.

_____

Before **LUCERO**, **HARTZ**, and **CARSON**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.

_____

Blue Valley Hospital, Inc., ("BVH") appeals the district court's dismissal of its action for lack of subject matter jurisdiction. On April 11, 2018, the Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS") terminated BVH's Medicare certification. The next day, BVH sought an administrative appeal before the HHS Departmental Appeals Board and brought this action. In this action, BVH seeks an injunction to stay the termination of its Medicare certification and provider contracts pending its administrative appeal. In effect, the injunction would provide BVH a pre-termination hearing. The district court dismissed, holding the Medicare Act requires BVH exhaust its administrative appeals before subject matter jurisdiction vests in the district court.

BVH acknowledges that it did not exhaust administrative appeals with the Secretary of HHS prior to bringing this action, but argues: (1) the district court had federal question jurisdiction arising from BVH's constitutional due process claim; (2) BVH's due process claim presents a colorable and collateral constitutional claim for which jurisdictional exhaustion requirements are waived under Mathews v. Eldridge, 424 U.S. 319 (1976); and (3) the exhaustion requirements foreclose the possibility of any judicial review and thus cannot deny jurisdiction under Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667 (1986). We disagree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I

BVH is an acute care hospital in Overland Park, Kansas, that provides a range of medical services, specializing in bariatric surgery and intervention services. CMS certified BVH as a hospital provider under the Medicare and Medicaid programs from 2015 until April 11, 2018.[1]

For a treatment facility to retain hospital classification under the Medicare and Medicaid programs the facility must be "primarily engaged" in providing care to "inpatients." 42 U.S.C. § 1395x(e)(1). Hospital classification allows BVH to receive payment through the Medicare and Medicaid programs for treatment it provides. 42 C.F.R. § 488.3(a)(1). To ensure healthcare providers comply with the statutory and regulatory Conditions of Participation in the programs, CMS conducts surveys through state survey agencies. 42 C.F.R. §§ 488.20(b), 488.26(c).

These surveys identify a facility's failures to meet certain participation requirements under the Medicare Act, termed deficiencies. 42 C.F.R. § 488.301. If a facility's deficiencies are serious or extensive enough, CMS may determine it is not in compliance with the Conditions of Participation. See 42 C.F.R. § 482.11. And if a facility is in violation of the Conditions of Participation, the Secretary may deny that facility further payments under the Medicare Act by terminating its provider

---

[1] The termination of BVH's provider agreement precludes BVH from receiving payment under both the Medicare and Medicaid programs. See 42 C.F.R. § 488.330(b)(1) (explaining a certificate of compliance grants eligibility to participate in Medicare and Medicaid for a dually participating facility).

3

agreement. 42 U.S.C. § 1395cc(b)(2). Following termination of a provider agreement, a facility can avail itself of an appeal process that includes: (1) a hearing before an Administrative Law Judge ("ALJ") under 42 C.F.R. § 498.5(b); (2) review of the ALJ decision by the HHS Departmental Appeals Board under 42 C.F.R. § 498.5(c); and (3) judicial review of the Departmental Appeals Board's decision under 42 C.F.R. § 498.5(c) and 42 U.S.C. § 405(g).

Pursuant to this regulatory framework, CMS, through the Kansas Department of Health and Environment, conducted an unannounced onsite survey of BVH on November 13 and 14, 2017. On February 2, 2018, CMS sent BVH a noncompliance notice detailing the deficiencies the onsite survey uncovered. The notice states that BVH did not meet the Conditions of Participation for hospitals because it was not "primarily engaged" in providing "inpatient services." Specifically, CMS analyzed BVH's historical data and determined that the facility did not meet either the two-patient average daily census requirement or the two-night average length of stay requirement. CMS had issued these criteria in an administrative guidance document, "S&C Memo 17-44," on September 6, 2017.

In the notice of noncompliance, CMS indicated it would terminate BVH's provider agreement on May 3, 2018, unless BVH presented a Plan of Correction to resolve the observed deficiencies. BVH timely submitted a Plan of Correction on February 12, 2018. In a termination notice dated March 27, 2018, CMS rejected the proposal as aspirational and moved forward the termination date of BVH's Medicare

4

and Medicaid provider agreement to April 11, 2018.  CMS terminated BVH's provider agreement on that date.

The following day, BVH submitted a request for an expedited appeal to the HHS Departmental Appeals Board.  BVH also filed this action against the following defendants:  (1) the Secretary of HHS, Alex M. Azar, II; (2) the Administrator for CMS, Seema Verma; and (3) the Regional Administrator for (Region 7) of CMS, Jeff Hinson.  BVH sought an injunction to prevent CMS from terminating its provider agreement pending the administrative appeal process.  Defendants moved to dismiss the action for lack of subject matter jurisdiction, but agreed to postpone termination to May 3, 2018, allowing BVH to continue to receive payment under the Medicare and Medicaid programs until that date.

CMS conducted a second survey of BVH on April 22 to 25, 2018.  On May 10, 2018, CMS issued a second statement of deficiencies summarizing that survey and affirming its decision to terminate BVH's Medicare and Medicaid provider agreement because it was not primarily engaged in providing inpatient services.  The district court dismissed BVH's action for lack of subject matter jurisdiction.  BVH timely appealed.

## II

We review dismissals for lack of subject matter jurisdiction de novo.  Niemi v. Lasshofer, 770 F.3d 1331, 1344 (10th Cir. 2014).  In reviewing an attack on the sufficiency of a complaint's allegations as to subject matter jurisdiction, we accept

the well-pled factual allegations in the complaint as true.  Pueblo of Jemez v. United States, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015).

**A**

BVH argues its constitutional procedural due process claim vests the district court with federal question jurisdiction pursuant to 28 U.S.C. § 1331.  But BVH may not avoid the administrative channeling provisions of 42 U.S.C. § 405(g) and (h) merely by couching its claims in constitutional terms.  Although that statute provides limited judicial review "after any final decision of the [Secretary]," § 405(g), it broadly states that "no action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter," § 405(h).[2]  So long as BVH's claim arises under the Medicare Act, the express language of § 405(h) thus negates BVH's assertion of § 1331 jurisdiction.

A claim arises under the Medicare Act if the claim derives "both . . . standing and . . . substantive basis" from the Act, or if the claim is "inextricably intertwined with [plaintiff's] claim for benefits."  Heckler v. Ringer, 466 U.S. 602, 615, 624

---

[2] The language of § 405 applies to claims arising under the Social Security Act, but another statutory provision applies § 405 to cases arising under the Medicare Act "to the same extent" that it applies in cases arising under the Social Security Act, "except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or Department of Health and Human Services, respectively."  42 U.S.C. § 1395ii.

(1984) (quotation omitted). BVH's claim arises under the Medicare Act because it derives standing and substantive basis from the Act's provisions allowing: (1) CMS to terminate a provider agreement, 42 U.S.C. § 1395cc(b)(2); and (2) a terminated provider to seek review of that decision, 42 U.S.C. § 1395cc(h)(1)(A). Although BVH advances procedural due process claims that arise under the Constitution, "it is . . . fruitless to argue that this action does not also arise under the [Act]" because the Act "provides both the standing and the substantive basis for the presentation of their constitutional contentions." Weinberger v. Salfi, 422 U.S. 749, 760-61 (1975) (emphasis added). In Salfi, the Court rejected an argument that the plaintiff "could bring his constitutional challenge to a Social Security Act provision in federal court pursuant to § 1331 because the claim was arising under the Constitution, not the [Act]." Ringer, 466 U.S. at 622 (quotation omitted). Because we hold that BVH's action constitutes "a claim arising under" the Medicare Act, the administrative channeling requirement in § 405(h) precludes federal question jurisdiction pursuant to § 1331.

BVH nonetheless contends the administrative exhaustion requirements apply only to challenges to the Secretary's final termination decisions, not to claims for injunctive relief seeking additional process.[3] But the "sweeping and direct" language

---

[3] To this end, BVH misquotes § 405(g), incorrectly asserting that it allows for judicial review "of any final decision," rather than "after any final decision." (emphases added). The implication that only challenges to final decisions need be administratively channeled is plainly incorrect. The statute makes clear that a final decision is a condition precedent to judicial review of any claim arising under the Act.

of § 405(h) refutes BVH's reading of the statute. Salfi, 422 U.S. at 757. Because it broadly states "[n]o action . . . shall be brought to recover on any claim arising under the Medicare Act," § 405(h) (emphasis added), that language alone disposes of BVH's attempt to proceed under § 1331.

Moreover, the Supreme Court has concluded that the type of relief sought is irrelevant to plaintiffs' efforts to avoid § 405's administrative channeling requirements. Ringer, 466 U.S. at 622 ("[W]e explicitly hold that our conclusion that the claims of [plaintiffs] are barred by § 405(h) is in no way affected by the fact that those [plaintiffs] did not seek an award of benefits," and instead sought injunctive relief); Salfi, 422 U.S. at 762 (explaining the reach of § 405(h) "is not limited to decisions of the Secretary on issues of law or fact" but "[r]ather, it extends to any 'action'"); see also Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13-14 (2000) ("[Salfi and Ringer] foreclose distinctions based upon . . . the 'declaratory' versus 'injunctive' nature of the relief sought . . . . There is no reason to distinguish among [claims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy] in terms of the language or in terms of the purposes of § 405(h).").

**B**

BVH also asserts jurisdiction pursuant to Mathews v. Eldridge, 424 U.S. 319 (1976). That case authorizes courts to reverse the Secretary's determination that a plaintiff has not yet obtained a final administrative decision for the purposes of satisfying § 405's exhaustion requirements under limited circumstances. Id. at 330-

8

331. We may do so only if "(1) the plaintiff asserts a colorable constitutional claim that is collateral to the substantive issues of the administrative proceedings, (2) exhaustion would result in irreparable harm, and (3) exhaustion would be futile." Harline v. Drug Enf't Admin., 148 F.3d 1199, 1203 (10th Cir. 1998).[4] "The plaintiff bears the burden of establishing these elements." Id. Because BVH establishes neither a collateral nor colorable constitutional claim, we do not address the remaining factors.

**1**

"For a claim to be collateral, it must not require the court to immerse itself in the substance of the underlying Medicare claim or demand a factual determination as to the application of the Medicare Act." Family Rehab., Inc. v. Azar, 886 F.3d 496, 501 (5th Cir. 2018) (quotation omitted). The claim "must seek some form of relief that would be unavailable through the administrative process," rather than the "substantive, permanent relief that the plaintiff seeks . . . through the agency appeals process." Id. at 501-02; see also Bowen v. City of New York, 476 U.S. 467, 483 (1986) (holding claims collateral because plaintiffs "neither sought nor were awarded benefits . . . but rather challenged the Secretary's failure to follow the application regulations").

---

[4] BVH argues it need make only a colorable showing that full relief cannot be granted at a post-deprivation hearing. But it is the constitutional claim that must be colorable. See id. ("If the mere allegation of a denial of due process could suffice to establish subject-matter jurisdiction, then every act of an agency would be immediately judicially reviewable, undermining a statutory scheme which limits judicial review").

BVH argues its claims are collateral because, like the claim at issue in Eldridge, they "sound only in constitutional or procedural law and request that benefits be maintained temporarily until the agency follows the statutorily or constitutionally required procedures." Family Rehab., 886 F.3d at 503. But BVH does not seek a general review of the constitutionality of the Medicare Act's termination procedures for healthcare providers.[5] And BVH could not viably pursue such a constitutional challenge because, as explained below, this court has rejected the claim that due process requires a formal hearing prior to the termination of a provider's Medicare certification. Geriatrics, Inc. v. Harris, 640 F.2d 262, 265 (10th Cir. 1981) ("There is . . . no statutory or constitutional requirement that a hearing be conducted prior to the cessation of benefits.").

Instead, BVH's due process claim is based on its disagreement with the factual determinations made by CMS and the manner in which CMS promulgated administrative guidance governing compliance determinations. The arguments supporting BVH's due process claim are thus identical to the arguments BVH raises

_____

[5] The fact that BVH's due process challenge does not dispute the sufficiency of the process generally afforded to Medicare providers prior to termination distinguishes this case from Family Rehabilitation. 866 F.3d at 496. In that case, the provider's claims "only require[d] the court to determine how much process is required under the Constitution and federal law before recoupment," and did "not require the court to wade into the Medicare Act or regulations." Id. at 503. BVH's due process claims, however, contest the content of CMS' administrative guidelines governing the finding that BVH is not a hospital, the retroactive application of those guidelines to BVH, and the process by which CMS promulgated those guidelines. Unlike plaintiff in Family Rehabilitation, BVH's claims improperly require that this court "immerse itself" in the substance of the underlying claim. Id. at 501.

10

in its administrative appeal to reverse the termination decision. The complaint specifically challenges as "[m]ost noteworthy" the fact that "CMS'[] decision relies primarily upon newly-issued criteria for determining whether a medical facility is 'primarily engaged' in providing inpatient services in order to qualify as a 'hospital' for Medicare purposes." BVH's constitutional claim requires that we assess in the first instance whether the agency violated the process due to BVH through the retroactive application of criteria promulgated as administrative guidance. Such an assessment necessarily "require[s] the court to immerse itself in the substance of the underlying Medicare claim" and make a factual determination about whether BVH was in substantial compliance. Family Rehab., 886 F.3d at 501 (quotation omitted).

Other circuits have expressly rejected BVH's assertion that constitutional challenges requiring courts to assess the application of Medicare regulations to a plaintiff are collateral. See Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285-86 (5th Cir. 1999) ("[T]o fully address [the provider's] claim that their due process . . . rights were violated through the improper enforcement of Medicare regulations, a court would necessarily have to immerse itself in those regulations and make a factual determination as to whether [the provider] was actually in compliance. Given the administrative nature of that inquiry, it cannot be reasonably concluded that [the provider's] claim is collateral."). As the Supreme Court has explained when distinguishing collateral from intertwined constitutional claims, allegations of "mere deviation from the applicable regulations in [any] particular administrative proceeding" are "fully correctable upon subsequent

11

administrative review," and should not disturb the presumption that an agency "should be given the opportunity to review application of those regulations to a particular factual context." Michigan Academy, 476 U.S. at 484-85. BVH's constitutional claims are not wholly collateral because they allege precisely such "deviation from the applicable regulations." Id. And the Secretary should determine in the first instance whether the retroactive application of criteria promulgated as administrative guidance was improper.

**2**

Even if BVH's constitutional claims were entirely collateral, they are not colorable. "A constitutional claim in this context is not colorable if it is immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous." Harline, 148 F.3d at 1203 (quotation omitted). This circuit has "generously [] defined" colorable, Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1240 (10th Cir. 2001), but will deny jurisdiction if the claims are "foreclosed by prior decisions," Harline, 148 F.3d at 1203 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998)).

Our decision in Geriatrics, 640 F.2d at 262, forecloses BVH's constitutional claim requesting a hearing before an ALJ prior to the termination of its Medicare provider agreement. In Geriatrics, which BVH neglects entirely, we held that "[t]here is [] no statutory or constitutional requirement that a hearing be conducted prior to the cessation of benefits" for providers such as BVH. Id. at 265 (explaining providers are not the intended beneficiary of the Medicaid program, and so "[t]he

12

unfortunate reality that [the provider] will probably encounter difficulty operating at capacity . . . [is] not of constitutional significance"). And BVH fails to distinguish the provider's claim for a pre-termination hearing that we rejected in Geriatrics from the identical relief BVH seeks in this case.

Our holding in Geriatrics is consistent with those of our sibling circuits. See Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354, 364 (6th Cir. 2000) ("[W]e hold that [the Medicare and Medicaid provider] has not made a colorable claim that it is entitled to a pre-termination hearing under the Due Process Clause."); Varandani v. Bowen, 824 F.2d 307, 310 (4th Cir. 1987) (declining to find a "'colorable' procedural due process claim sufficient to establish jurisdiction" after plaintiff provider requested and was denied a formal, pre-termination hearing); Ritter v. Cohen, 797 F.2d 119, 123 (3d Cir. 1986) (declining to require additional process because provider had an opportunity "to submit written reasons why he should not be terminated from the program"); Northlake Cmty. Hosp. v. United States, 654 F.2d 1234, 1243 (7th Cir. 1981) (holding a Medicare provider's "claim to a pre-termination hearing does not rise even to the level of a colorable constitutional claim").

Geriatrics is also consistent with Supreme Court dicta suggesting that providers losing their certification are not entitled to a pre-termination hearing. See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 784 n.17 (1980). The "Court in O'Bannon . . . makes it clear that the post-termination hearing provided under Medicare regulations adequately meets a provider's due process objections."

13

Northlake, 654 F.2d at 1243. BVH thus fails to raise a colorable constitutional claim and cannot claim jurisdiction pursuant to the Supreme Court's decision in Mathews v. Eldridge.[6]

## C

Finally, BVH argues the federal courts have subject matter jurisdiction pursuant to the exception to jurisdictional administrative exhaustion requirements outlined in Michigan Academy. The Supreme Court has clarified that this exception to the administrative channeling requirement in § 405(h) applies only if exhaustion requirements "would not simply channel review through the agency, but would mean no review all." Ill. Council, 529 U.S. at 19. BVH contends that the economic consequences of its loss of Medicare provider status would render it financially

---

[6] The Supreme Court granted certiorari in Azar v. Allina Health Services, 139 S. Ct. 51 (Sept. 27, 2018), to decide whether the Medicare Act requires HHS to conduct notice-and-comment rulemaking before issuing instructions to Medicare contractors making payment determinations. This grant does not alter our conclusion that BVH fails to present a colorable constitutional claim. Even if the Supreme Court were to hold the Medicare Act requires notice-and-comment rulemaking, and thus precludes the promulgation of new criteria in the form of administrative guidance as HHS did in this case, such a holding would not disturb the circuit court's previous determinations that the Medicare Act does not entitle providers to a formal pre-termination hearing.

Moreover, to the extent that Allina is relevant, BVH's reliance upon Allina only further demonstrates that its constitutional claim is not collateral to the underlying administrative action. BVH's Allina argument—that CMS denied BVH due process by terminating its provider agreement pursuant to criteria issued through administrative guidance rather than notice-and-comment rulemaking—is identical to the argument it presumably will present in the post-termination hearing. And that argument "require[s] the court to immerse itself in the substance of the underlying Medicare claim." Family Rehab., 886 F.3d at 502.

14

unable to pursue its administrative appeal, and thus foreclose the possibility of both administrative and judicial review.

But the Supreme Court has declined to extend the Michigan Academy exception to cases in which parties allege financial hardship forecloses further review. See Ill. Council, 529 U.S. at 22 ("[W]e do not hold that an individual party could circumvent [§ 405(h)'s] channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case."). The Court in Illinois Council recognized that "the 'channeling' of virtually all legal attacks through the agency . . . comes at a price, namely, occasionally individual, delay-related hardship," but determined that Congress deemed that price "justified" in crafting the Medicare Act. Id. at 13.

Moreover, this circuit has recognized a denial of review sufficiently absolute to trigger the Michigan Academy exception only if there exist "no conceivable set of circumstances that could have permitted Plaintiffs to challenge the validity of the [administrative action] within the procedures provided by the agency." Bartlett Mem'l Med. Ctr., Inc. v. Thompson, 347 F.3d 828, 844 (10th Cir. 2003). Because BVH's administrative appeal "has been filed and is currently pending before an ALJ," BVH cannot establish the "total preclusion of review" necessary to avail itself of the Michigan Academy exception. Ill. Council, 529 U.S. at 19 (noting the "distinction that this Court has often drawn between a total preclusion of review and postponement of review").

### III

For the foregoing reasons, we **AFFIRM** the district court's dismissal of BVH's action for lack of subject matter jurisdiction.