**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1187**

───────────────

L.N.P., on his own behalf and on behalf of his dependent children P.D.P. and L.D.P., and on behalf of all others similarly situated,

Plaintiff - Appellant,

v.

KILOLO KIJAKAZI, in her official capacity as Acting Commissioner of the Social Security Administration; SOCIAL SECURITY ADMINISTRATION,

Defendants - Appellees.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:21-cv-00820-MSN-TCB)

───────────────

Argued:  December 8, 2022                     Decided:  April 7, 2023

───────────────

Before NIEMEYER, AGEE, and QUATTLEBAUM, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Quattlebaum joined.

───────────────

**ARGUED**:  Cameron Reynolds Argetsinger, II, KELLEY DRYE & WARREN LLP, Washington, D.C., for Appellant.  Hugham Chan, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.  **ON BRIEF**:  Ira T. Kasdan, KELLEY DRYE & WARREN LLP, Washington, D.C., for Appellant.  Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellees.

───────────────

NIEMEYER, Circuit Judge:

This appeal addresses the question of whether an applicant for retirement benefits under the Social Security Act has satisfied the conditions necessary for excusing his failure to exhaust the administrative process required by 42 U.S.C. § 405(g) when challenging the calculation of the benefits that he received.

In October 2019, just before his 62nd birthday, L.N.P. applied to the Social Security Administration ("SSA") for early retirement benefits, as well as "auxiliary" benefits for his two dependent children.  SSA approved his application, advising him that by January 2020, after he turned 62, he would receive retirement benefits of $2,154 per month, and his children would each receive auxiliary benefits of $1,107 per month, the amount of which was derived from the amount of L.N.P.'s benefits.

Believing that SSA had used an incorrect formula to calculate his children's benefits and was underpaying them as a result, L.N.P. filed a request with SSA for reconsideration, and an SSA employee informed him by telephone that his request was being denied.  When L.N.P. asked for a written confirmation of SSA's decision, the employee indicated that she would request one but that it could take up to a year to be issued.  In July 2021, after not receiving a written decision for more than a year, L.N.P. commenced this action against SSA pursuant to 42 U.S.C § 405(g) on behalf of himself, his two dependent children, and a putative class of similarly situated individuals.  In his complaint, he challenged SSA's method for calculating auxiliary benefits for dependent children, alleging that it violated a provision of the Social Security Act, 42 U.S.C. § 403, and an implementing regulation, 20 C.F.R. § 404.403.   He also alleged that "[a]ny requirement for exhaustion of [his]

2

administrative remedies should be excused in this case." For relief, he requested declaratory and injunctive relief to correct SSA's method of calculation, as well as an award for his children's past-due benefits.

Shortly after L.N.P. commenced this action, SSA issued its written decision, affirming its denial of L.N.P.'s request and standing by its method of calculation.

SSA filed a motion to dismiss L.N.P.'s complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that the district court "lacked subject matter jurisdiction" because § 405(g)'s waiver of sovereign immunity applied only with respect to judicial review of a "final decision of the Commissioner of Social Security" and that L.N.P. had not obtained a final decision, having refused to "exhaust [the] four-step administrative process before the [Agency]." It also argued that L.N.P. should not be excused from exhausting the administrative process, as he alleged in his complaint. On the merits, SSA contended that it had properly calculated L.N.P.'s children's auxiliary benefits and therefore that L.N.P.'s complaint should be dismissed as a matter of law.

The district court granted SSA's motion and dismissed L.N.P.'s complaint without prejudice, concluding that L.N.P.'s failure to exhaust was "a jurisdictional problem requiring dismissal under [Rule] 12(b)(1)" and that L.N.P. had failed to satisfy the conditions necessary for excusing exhaustion. After L.N.P. filed a motion to alter or amend the judgment under Rule 59(e) on the ground that the failure to exhaust was not jurisdictional, the district court stated that "whether . . . analyzing this [case] under 12(b)(1) or 12(b)(6)," it would "come to the same conclusion" — namely, that the "exceptions to exhaustion [had] not been met." Accordingly, the court denied L.N.P.'s Rule 59(e) motion.

3

While we agree with L.N.P. that § 405(g)'s exhaustion requirement is not jurisdictional, we nonetheless conclude that exhaustion is a mandatory requirement of the Social Security Act that may be excused only in a narrow set of circumstances, which are not present here. Accordingly, we affirm the district court's order on the basis of Rule 12(b)(6).

I

Under the Social Security Act, individuals who reach "retirement age" are entitled to "old age insurance benefits" based on their earnings record. At the time of L.N.P.'s application for benefits, the applicable full retirement age was 66½ years old. In addition, retirees' "auxiliaries" — such as spouses and dependent children under the age of 18 — are each entitled to receive benefits derivative from the retiree's benefits in an amount that may not exceed one-half of the retiree's benefits. But all such benefits — the retiree's and auxiliaries' — are subject to a statutory family maximum amount that can have the effect of limiting the auxiliaries' benefits. If a retiree reaches the age of 62, he may elect to apply for a reduced "early retirement" benefit at any time thereafter up to the full retirement age.

In this case, L.N.P. elected to receive early retirement benefits at age 62, and his reduced benefit was calculated to be $2,154 per month, rather than the full retirement benefit, which would have been $2,954 per month had he waited until age 66½. His two dependent children each received an auxiliary benefit of $1,107 per month. After receiving notice of these benefits, L.N.P. believed that SSA had miscalculated his children's benefits and thus was underpaying them, and he so notified SSA. He maintained that under the

4

Social Security Act, when he elected to receive a reduced benefit based on early retirement, that reduced amount should effectively *increase the remaining portion* of the family maximum amount that would then be available to his dependent children, increasing the benefit for each child by $375 per month. He argued that his calculation was required by the First Circuit's decision in *Parisi by Cooney v. Chater*, 69 F.3d 614 (1st Cir. 1995), which interpreted certain provisions of 42 U.S.C. § 403 and 20 C.F.R. § 404.403 and which SSA had officially adopted.

SSA, however, took the position that the children's benefits must be based on the family maximum benefit minus the *full* retirement benefit, even if the retiree receives a reduced benefit amount, and that therefore L.N.P.'s dependent children were not entitled to any additional payment. SSA explained that its method of calculation reflected a policy that when the retiree receives a reduced benefit, the auxiliary benefits based on that retiree's work record must also be reduced — not proportionally increased, as L.N.P. would have it — and it thus viewed L.N.P.'s proposed method as "lead[ing] to the absurd result of redistributing to auxiliary beneficiaries the benefits that the early retiree chose to forego."

L.N.P. commenced this action seeking a declaration that his method of calculation is correct, an injunction requiring SSA to follow it, and reimbursement of the underpayment amount of $375 per child per month. In his detailed 31-page complaint, L.N.P. alleged that SSA "improperly deduct[ed] a much larger amount from the 'family maximum' than [it] should," resulting "in lesser amounts of child's insurance benefits being paid than is required by law." He alleged that SSA's improper calculations were

5

"traceable to [its] failure to properly apply the holding of the First Circuit's decision in [*Parisi*], which [properly] construed [42 U.S.C.] § 403 and 20 C.F.R. § 404.403."

In his complaint, L.N.P. acknowledged that he did not exhaust his administrative remedies, as required by 42 U.S.C. § 405(g), but he alleged that "[a]ny requirement for exhaustion of administrative remedies should be excused in this case," setting forth in detail the reasons for doing so. *First*, he alleged that his claims "[were] collateral to any claims for benefits." *Second*, he alleged that he and his dependent children "[were] being irreparably harmed and [could] not adequately be compensated by the relief that would accrue from a judicial proceeding," pointing to "economic hardship." And *third*, he alleged that "the purpose of exhaustion would . . . not be served by requiring exhaustion" in the circumstances where SSA's position was "entrenched" and "exhaustion would be futile," because "SSA would not likely overturn its current illegal policy." He maintained that in these circumstances, the Supreme Court has authorized waiver or judicial excuse of § 405(g)'s exhaustion requirement.

On SSA's motion, the district court dismissed L.N.P.'s complaint, concluding that L.N.P. could not be excused from exhausting administrative remedies and that his complaint was therefore subject to dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. Addressing L.N.P.'s alleged justification for excusing exhaustion, the court concluded first that "[L.N.P.'s] challenge to the SSA's policy [was] too closely tied to his demand for increased auxiliary benefits for the issue of benefits to be collateral to his cause," noting that L.N.P.'s claims were "inextricably intertwined" with his "claim for benefits" and should "be channeled first into the administrative process which Congress

6

has provided for the determination of claims for benefits" (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984), and citing *Turnbull v. Berryhill*, 490 F. Supp. 3d. 132, 141, 143 (D.D.C. 2020)).  The court also concluded that exhausting administrative remedies would not be futile but would be consistent with the purpose of allowing SSA "to expound on its position at the administrative level," rather than through the judicial process, "'especially given' that the issue is one of first impression" (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (explaining that "the 'channeling' of virtually all legal attacks through [SSA]" "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly *premature interference* by different individual courts" (emphasis added))).  Finally, the court concluded that exhausting administrative remedies would not lead to irreparable harm because "the alleged harm is entirely monetary in nature" and there was no allegation of economic hardship flowing from the lack of an additional $375 per month.  Based on this analysis, the court dismissed L.N.P.'s complaint for lack of subject-matter jurisdiction under Rule 12(b)(1).  But after L.N.P. filed a Rule 59(e) motion to alter or amend the judgment, the court explained that it would "come to the same conclusion under Rule 12(b)(6)" and therefore denied that motion.

From the district court's judgment dated November 24, 2021, and its order denying L.N.P.'s Rule 59(e) motion dated February 11, 2022, L.N.P. filed this appeal.

II

On the subjects of jurisdiction and exhaustion of administrative remedies, the Social

Security Act provides:

> The findings and decisions of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. *No findings of fact or decision of the Commissioner of Social Security shall be reviewed* by any person, tribunal, or governmental agency *except as herein provided*. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (emphasis added). As the Supreme Court has observed, this section

"withdraws federal-court jurisdiction under 28 U.S.C. §§ 1331, 1346" and "serves to route

review through § 405(g)." *Smith v. Berryhill*, 139 S. Ct. 1765, 1776 n.13 (2019) (cleaned

up). Section 405(g), in turn, provides, as relevant:

> Any individual, *after any final decision of the Commissioner of Social Security made after a hearing* to which he was a party, irrespective of the amount in controversy, *may obtain a review of such decision by a civil action* commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .

42 U.S.C. § 405(g) (emphasis added). By requiring a final decision of the Commissioner

as a condition for judicial review, § 405(g) effectively mandates exhaustion of

administrative remedies as a prerequisite for filing suit. Specifically, as the Supreme Court

explained the process:

> Modern-day claimants must generally proceed through a four-step process before they can obtain review from a federal court. First, the claimant must seek an initial determination as to his eligibility. Second, the claimant must

seek reconsideration of the initial determination. Third, the claimant must request a hearing, which is conducted by an ALJ. Fourth, the claimant must seek review of the ALJ's decision by the Appeals Council. See 20 CFR § 416.1400. If a claimant has proceeded through all four steps on the merits, all agree, § 405(g) entitles him to judicial review in federal district court.

*Smith*, 139 S. Ct. at 1772. The exhaustion requirement was designed to let SSA process claims in accordance with its complex procedures and apply its expertise before authorizing judicial review. As the Court in *Weinberger v. Salfi* explained:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have *an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise*, and to compile a record which is adequate for judicial review.

422 U.S. 749, 765 (1975) (emphasis added).

Because the Commissioner of Social Security has "ultimate responsibility for the integrity of the administrative program," she has the discretion to waive the exhaustion requirement if she "satisfies [her]self, at any stage of the administrative process, that no further review is warranted either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond [her] power to confer." *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976); *see also Bowen v. City of New York*, 476 U.S. 467, 483 (1986). And in "exceptional circumstances," *a court* may excuse the exhaustion requirement. *Hyatt v. Heckler*, 807 F.2d 376, 378 (4th Cir. 1986) (citing *Bowen*, 476 U.S. at 483); *see also Smith*, 139 S. Ct. at 1774 (observing that exhaustion "may not only be waived by the agency, but also excused by the courts" (citations omitted)).

The Supreme Court has identified three conditions that permit a court to excuse compliance with § 405(g), namely, when (1) "[t]he claims . . . are collateral to the claims

9

for benefits"; (2) "the claimants . . . would be irreparably injured were the exhaustion requirement . . . enforced against them"; and (3) "[t]he purposes of exhaustion would not be served by requiring" it, as exhaustion would be "futile." *Bowen*, 476 U.S. at 483–85; *see also Hyatt*, 807 F.2d at 378. Even so, the *Bowen* Court admonished that "[i]n the normal course," exhaustion should not be excused. 476 U.S. at 484–85.

In short, Congress has channeled all claims for social security benefits first to SSA for its consideration and resolution in accordance with its administrative procedures and, only after the Commissioner of Social Security has issued her final decision, to a district court. That statutory sequence is mandatory. Yet, in exceptional circumstances, when the purposes of the administrative process have been fulfilled or when the Commissioner determines she has no power to grant the relief requested, the Commissioner may, in her discretion, waive the exhaustion requirement and allow the claim to proceed to court. Moreover, focusing on those same considerations, *a court* may excuse the exhaustion requirement. And there may also be an equitable justification for excusing exhaustion in the circumstance when engaging in the administrative process would result in irreparable injury to the claimant. *See Bowen*, 476 U.S. at 483–84.

With these principles in hand, we address L.N.P.'s contention that the district court erred in not excusing exhaustion of administrative remedies in this case.

## III

At the outset, L.N.P. contends that the district court erred by "treating exhaustion as a jurisdictional question" and dismissing his complaint under Rule 12(b)(1), rather than

10

addressing it under Rule 12(b)(6) and the standards applicable to that rule. He contends further that because exhaustion is not a jurisdictional question, it is an "affirmative defense to be established by [SSA] and not by the complaint." And the complaint, as he notes, must be taken on its face as true at this stage of the proceedings. He argues that, because the complaint made sufficient non-conclusory factual allegations that established at least one of the three recognized exceptions to exhaustion, the district court erred in dismissing it.

In the initial order dismissing the complaint, the district court did indeed treat exhaustion as a jurisdictional question and accordingly relied on Rule 12(b)(1) to dismiss it. At the hearing on L.N.P.'s motion to modify that order under Rule 59(e), which claimed that Rule 12(b)(6) and not Rule 12(b)(1) should have been applied, the district court stated, "whether in analyzing this under 12(b)(1) or 12(b)(6), I've come to the same conclusion, which is that exhaustion — the exception to exhaustion has not been met."

L.N.P.'s argument is well taken. While § 405(h) channels judicial review to § 405(g), and § 405(g) in turn provides for judicial review only after the claimant obtains a "final decision of the Commissioner of Social Security made after a hearing," § 405(g) addresses both subject-matter jurisdiction and the mandatory, but waivable, conditions for judicial review. The *Mathews* Court explained how § 405(g) has these "two elements":

> [The requirement of a final decision by the Commissioner made after a hearing] consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the [Commissioner] in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the [Commissioner] be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the [Commissioner].

11

> Absent such a claim there can be no "decision" of any type. And some decision by the [Commissioner] is clearly required by the statute.

424 U.S. at 328[*]; *see also Smith*, 139 S. Ct. at 1773–74; *Bowen*, 476 U.S. at 482–83. Thus, § 405(g) confers jurisdiction on district courts to review claims so long as the claims have first been submitted to the Commissioner. With that jurisdiction, courts may then consider and address questions relating to whether the exhaustion requirement has been satisfied or whether it has been waived or may be excused. *See Smith*, 139 S. Ct. at 1774.

Accordingly, a motion under Rule 12(b)(1), which addresses a court's subject-matter jurisdiction, does not reach exhaustion issues when the claim has been submitted to SSA. Moreover, a Rule 12(b)(6) motion to dismiss, which addresses the sufficiency of the complaint, generally does not enable the court to determine whether the exhaustion requirement has been satisfied or whether it has been waived or should be excused, because exhaustion is treated as an affirmative defense. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 211–12 (2007). When, however, "facts sufficient to rule on an affirmative defense [such as exhaustion] are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). But this principle applies only in the "relatively rare circumstances" when "all facts necessary to the affirmative defense clearly appear on the face of the complaint."

---

[*]The Supreme Court's opinion refers to the "Secretary" of Health, Education, and Welfare, rather than the "Commissioner" of Social Security. The Social Security Act, however, was later amended to substitute the Commissioner for the Secretary. *See* Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103–296, § 102, 108 Stat. 1464, 1465–66 (1994) (codified at 42 U.S.C. § 902). For purposes of this opinion, the distinction makes no difference.

*Id.* (cleaned up). And even to succeed in these rare circumstances, the defendant must show "that the plaintiff's potential [response] to the affirmative defense was foreclosed by the allegations in the complaint." *Id.* at 466.

We conclude that the *Goodman* exception applies in this case. L.N.P., recognizing that satisfying exhaustion under § 405(g) was the generally applicable and mandatory rule and that he had not administratively exhausted his claims, alleged in great detail why his case was exceptional and why his circumstances satisfied all three conditions identified for a court to excuse exhaustion. In summary, his complaint alleged (1) that his claims were "collateral to [any] claims for benefits" because of their systemic nature; (2) that he would be "irreparably harmed" if he were required to exhaust his claims administratively; and (3) that "exhaustion would be futile as a practical matter because the SSA would not likely overturn its current illegal policy." In his brief on appeal, he agrees that in response to the lack-of-exhaustion affirmative defense, he "bears the burden of showing that one or more of the [*Bowen*] exceptions apply," but he argues that "the Complaint alleges sufficient facts to warrant waiver of exhaustion."

On this threshold question raised by L.N.P., we therefore conclude that, while the district court erroneously relied on Rule 12(b)(1) in the first instance to dismiss L.N.P.'s complaint, we can, in the circumstances of this case, review the merits of the exhaustion requirement under Rule 12(b)(6). This is so because the merits of that defense can be fully adjudicated by looking to the face of the complaint to determine whether L.N.P. would be able to justify excusing compliance with § 405(g)'s exhaustion requirement.

13

IV

On the merits, the district court held that L.N.P. satisfied none of the three *Bowen* conditions, and accordingly, it dismissed L.N.P.'s complaint for failing to exhaust administrative remedies as required by § 405(g). L.N.P. contends that the court erred with respect to each condition, although he maintains that he need only satisfy one of them.

Before addressing the *Bowen* conditions, we note that L.N.P.'s contention that satisfaction of any one condition is sufficient to bypass the exhaustion requirement appears to be foreclosed by our precedent. In *Bowen*, the Supreme Court identified and applied all three factors, stating:

> [1] The claims in this lawsuit are collateral to the claims for benefits . . . . [2] Moreover . . . the claimants . . . would be irreparably injured were the exhaustion requirement now enforced against them. . . . [3] Finally, . . . guided by the policies underlying the exhaustion requirement, . . . exhaustion would have been futile.

476 U.S. at 483–85 (cleaned up). And in *Hyatt*, we likewise articulated the three *Bowen* conditions and applied them *conjunctively*, suggesting that all three must be satisfied. *See* 807 F.2d at 378. We stated in conclusion that "the district court's judicial waiver of the exhaustion of administrative remedies satisfies *the criteria* prescribed by the Supreme Court. *Id.* at 380 (emphasis added); *accord Blue Valley Hospital, Inc. v. Azar*, 919 F.3d 1278, 1284 (10th Cir. 2019); *Justiniano v. SSA*, 876 F.3d 14, 27 (1st Cir. 2017); *Degnan v. Burwell*, 765 F.3d 805, 808 (8th Cir. 2014); *Kildare v. Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003). While the issue need not be conclusively resolved here, we understand that it could reasonably be argued that while *both* collaterality and futility would have to be shown, as they go to the practical necessity of exhaustion, irreparable injury might, in some

14

circumstances, operate as an independent equitable justification for bypassing exhaustion if it were pellucidly clear that such injury were likely.

Nonetheless, we address whether L.N.P. has satisfied each of the three *Bowen* conditions.

## A

L.N.P. argues first that his claims are "collateral" to his claim for benefits, as he is seeking relief requiring SSA to "make ministerial calculations consistent with [the] law," which reaches beyond the specific relief requested for himself and his children. He alleged in his complaint that SSA's calculations of auxiliary benefits have been violating § 403 of the Social Security Act and 20 C.F.R. § 404.403, and that these "procedural violations" constitute "a system-wide failure" and therefore are "collateral to any claims for benefits."

But L.N.P. also alleged in his complaint that he made a claim for benefits on his own behalf and on behalf of his children and that SSA awarded him and his children benefits based on calculations that, he claimed, violated 42 U.S.C. § 403 and 20 C.F.R. § 404.403. And he alleged further that because SSA was not applying the proper calculation, "[his] eligible children . . . are and have been underpaid at least $375 per month each." Thus, he concluded, his children "are owed several thousands of dollars in past due benefits." For relief, he requested that the court order SSA "immediately to re-calculate" his children's benefits "and to provide full payment, including past-due benefits."

L.N.P.'s complaint, which claimed systemic procedural violations *that arose from his own claim* for benefits, presents exactly the scenario that the Supreme Court has found

15

does not justify bypassing the exhaustion requirement of § 405(g).  *See Ringer*, 466 U.S. at 613–14 (1984).  In *Ringer*, the claimants likewise brought a systemic challenge to the agency's established procedures — in that case, for denying benefits for a particular surgical procedure — but the Court found that "those claims [were] 'inextricably intertwined' with [the claimants' own] claims for benefits," which were based on the SSA's denial of benefits for the same surgical procedure.  *Id.* at 614.  Consequently, the Court held that such a mix of claims "should be channeled first into the administrative process which Congress has provided for the determination of claims for benefits."  *Id.*

As in *Ringer*, we conclude that L.N.P.'s own claims for benefits are inextricably intertwined with his systemic claims because both are based on the very same allegedly erroneous method of calculating benefits.  The claims are therefore not collateral in the sense first articulated in *Mathews*, where, as the Court noted, the constitutional challenge alleging a violation of the claimant's due process rights was "*entirely collateral* to [the claimant's] substantive claim of entitlement."  424 U.S. at 330 (emphasis added).  Accordingly, L.N.P.'s systematic claims do not warrant excusing the exhaustion of the administrative process specified in § 405(g).

B

L.N.P. also argues that requiring him to exhaust administrative remedies will cause his dependent children "irreparable hardship."  He alleged that the irreparable hardship would arise from "economic hardships" caused by waiting for back benefits; by his mortality risk as a man in his 60s, given that his children's benefits are derivative of his

16

own; and by the loss of interest on any economic reparation. In short, the irreparable hardship that L.N.P. claims is entirely economic. Moreover, the heightened mortality risk he alleged exists regardless of whether his children receive increased benefits; his death would not be a relevant factor for determining benefits payable before his death.

Economic hardship of the type L.N.P. claims is not the kind of equitable condition for which courts have excused exhaustion of the administrative process. For instance, in *Mathews*, the Court recognized a risk of irreparable injury based on the claimant's physical condition and corresponding dependency on disability benefits, such that "termination [of benefits] would damage him in a way not recompensable through retroactive payments." 424 U.S. at 331. And in *Bowen*, the Court accepted the district court's finding that the "ordeal of having to go through the administrative appeal process may trigger a severe medical setback" for the claimant and therefore result in irreparable injury. 476 U.S. at 483.

In his complaint, L.N.P. alleged no physical injury, much less irreparable injury, that would be suffered as a consequence of delayed payment. Moreover, even as to the alleged economic hardship, he alleged that each of his children was receiving $1,107 per month and that, if he were to be successful, those payments would increase by only $375 per month. He made no allegation that this underpayment was depriving his children of basic life necessities or other matters of similar gravity. *See Hyatt*, 807 F.2d at 380 (applying the exception where the claimants would be "irreparably injured if the exhaustion requirement were enforced against them"); *see also Smith v. Schweiker*, 709 F.2d 777, 781

17

(2d Cir. 1983) (noting that the claimant's harms were not irreparable when they were "currently . . . receiving benefits and [were] eligible to make claims for past losses").

C

Finally, L.N.P. argues that pursuing the administrative process would be futile because SSA personnel would follow its internal "Program Operations Manual System," which, he claims, provides the method for calculating auxiliary benefits that is inconsistent with 42 U.S.C. § 403 and 20 C.F.R. § 404.403.  He alleged in his complaint that "SSA would *not likely* overturn its current illegal policy" that "has been 'entrenched' for decades."  (Emphasis added).

L.N.P.'s speculation as to what SSA would do might well be correct.  But it also might not be correct.  *See Bowen*, 476 U.S. at 487 (stressing that not "every internal policy [alleged] to be inconsistent with legal requirements . . . will justify . . . excusing exhaustion").  Indeed, this type of issue is of the kind that falls squarely within the policy underlying the exhaustion requirement that Congress recognized in enacting § 405(g).  As the *Bowen* Court explained, the "policies underlying the exhaustion requirement" include:

> preventing premature interference with agency processes, so that the agency may function efficiently and *so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise*, and to compile a record which is adequate for judicial review.

*Id.* at 484 (emphasis added) (quoting *Salfi*, 422 U.S. at 765); *see also Smith*, 139 S. Ct. at 1779 (noting that "a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question").

18

Neither the district court nor this court has had the benefit of reviewing SSA's decision in light of a reasoned explanation for why it believes that the best interpretation of § 403 and 20 C.F.R. § 404.403 requires that auxiliary benefits be calculated based on the difference between the family maximum and the retiree's full retirement benefit, rather than the retiree's early retirement benefit. As SSA argued to the district court, even if it were "certain[]" that full exhaustion would leave its initial decision unchanged, it is nevertheless a significant and valuable procedural step to retain because it allows SSA "to get its explanation on the record as to why it has interpreted certain provisions in a particular way." We agree.

\*       \*       \*

In sum, L.N.P. made a claim to SSA for retirement benefits for himself and auxiliary benefits for his children. SSA awarded both him and his children benefits, calculating their amount in accordance with its operative internal manual. L.N.P. disagreed with SSA's calculation of his dependents' auxiliary benefits and commenced this action without exhausting the administrative process. Despite his efforts to emphasize the fact that a favorable decision in his case would benefit many similarly situated persons, this case is, at bottom, about L.N.P.'s disagreement with the manner in which SSA disposed of his claim for benefits.

Congress has stated clearly that all such claims must be channeled through § 405(g), which requires exhaustion through SSA's administrative process. L.N.P.'s claims do not present the rare case in which bypassing that process is justified. The district court dismissed L.N.P.'s complaint without prejudice, which allows L.N.P. to pursue his claims

19

in court after completing the administrative process.  We affirm the judgment of the district court.

AFFIRMED